INTERSTATE COMMERCE COMMISSION v. GOODRICH. TRANSIT COMPANY.

INTERSTATE COMMERCE COMMISSION v. SAME.

UNITED STATES v. WHITE STAR LINE.

UNITED STATES v. SAME.

APPEALS FROM THE UNITED STATES COMMERCE COURT.

Nos. 879, 880, 881, 882. Argued February 20, 21, 1912.—Decided April 1, 1912.

Conclusions and argumentative deductions set forth in the bill as to effect of orders of a governmental body upon complainant are not to be regarded under the rules of pleading as allegations of fact and admitted. *United States* v. *Ames,* 99 U. S. 35.

Carriers partly by railroad and partly by water under a common arrangement for a continuous carriage are as specifically within the term of the Interstate Commerce Act of June 29, 1906, 34 Stat. 584, c. 3591, as any other carrier named therein.

Such carriers are subject to the provisions of the act authorizing the Commission to require a system of accounting.

Such carriers, while engaged in carrying on traffic under joint rates with railroads filed with the Interstate Commerce Commission, are bound to deal upon like terms with all shippers availing of the rates and are generally subject to the Interstate Commerce Act.

Section 20 of the Interstate Commerce Act gives the Commission ample authority to require accounts to be kept by carriers in the manner prescribed by the Commission.

A statute requiring a carrier doing both interstate and intrastate business to render accounts of all of its business is not beyond the power of Congress as a regulation of intrastate commerce.

Carriers partly by land and partly by water may be required to keep accounts of all their traffic, both interstate and intrastate, under the provisions of § 20 of the act of June 29, 1906.

Congress may not delegate its purely legislative power; but having laid down general rules of action under which a commission may pro-

ceed, it may require that commission to apply such rules to particular situations.

The provisions of § 20 of the act of June 29, 1906, authorizing the Interstate Commerce Commission to require accounts to be kept in a specified manner by interstate carriers, are not an unconstitutional delegation of legislative power.

Under § 20 of the act of June 29, 1906, the Interstate Commerce Commission is to be fully informed of all business conducted by a carrier of interstate traffic; and this includes all operations of such carriers, whether strictly transportation or not; in this case *held* to include amusement parks operated by a carrier of interstate commerce partly by land and partly by water.

190 Fed. Rep. 943, reversed.

THE facts, which involve the constitutionality and construction of the provisions of the Interstate Commerce Act in regard to accounts to be kept by carriers partly by land and partly by water, are stated in the opinion.

*Mr. Charles W. Needham* for the Interstate Commerce Commission:

The provisions of § 20 have a real and substantial relation to the execution of the powers and the attainment of the purposes of the Act to Regulate Commerce; therefore Congress has power to require statistical reports from, and a uniform system of bookkeeping by, every common carrier subject to the act, and the Interstate Commerce Commission acted within its statutory power in requiring such reports from, and classification of accounts by, such carriers. *Gibbon* v. *Ogden*, 9 Wheat. 1, 196, 223; *Inter. Com. Comm.* v. *Balt. & O. R. R. Co.*, 145 U. S. 276; *Int. Com. Comm.* v. *Cincinnati, N. O. & T. P. R. Co.*, 167 U. S. 506; *Texas & Pac. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 438; *Adair* v. *United States*, 208 U. S. 178; *Inter. Com. Comm.* v. *Ill. Cent. R. R. Co.*, 215 U. S. 452, 474; *Balt. & Ohio R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 31; *Balt. & Ohio R. R. Co.* v. *Int. Com. Comm.*, 221 U. S. 612, 618; *Southern Railway Co.* v. *United States*, 222 U. S. 20,

24; *N. Y., N. H. & H. Railroad Co.* v. *I. C. C.,* 200 U. S. 361, 391.

The primary objects of the Act to Regulate Commerce are to destroy favoritism, to prevent rebating and undue advantages of every kind which give to one shipper over the public highways an undue advantage over contemporaneous shippers, and when these unlawful acts by an interstate commerce agent are discovered by an examination of carriers' accounts, it becomes apparent that there is a real or substantial relation or connection between what is required by these orders in respect to accounts and the object which the Act to Regulate Commerce obviously is designed to attain. Reports would be valueless for the purposes of comparison with former reports by the same carrier unless the classification was uniform.

Common carriers by water, who have voluntarily filed with the Interstate Commerce Commission joint tariffs under which they operate jointly with railroads in transporting interstate passengers and property over through routes partly by railroad and partly by water, are agents of interstate commerce and as such may be lawfully required to classify their accounts and make statistical reports of their entire business as common carriers.

The relation of a carrier to a particular traffic, or to instrumentalities which are under the regulating power of Congress, determines whether such a carrier is subject to the act. *Re Oyster Police Steamers,* 31 Fed. Rep. 763; *The City of Salem,* 37 Fed. Rep. 846; *Daniel Ball,* 10 Wall. 557; *So. Pac. Terminal Co.* v. *Inter. Com. Comm.,* 219 U. S. 498.

These cases recognize the power of Congress to legislate in reference to the agents of interstate commerce who are carrying on a transportation business which is subject to the act. It is not the terminology of the statute or the manner in which its agents are brought under the regulating power of Congress, but it is the fact that they are

carrying on transportation which is subject to the regulating power of Congress and which is to be protected from favoritism by the Commission, that renders them subject to all the general provisions of the act applicable to agents.

The orders of the Interstate Commerce Commission are not arbitrary, but tend to advance the general purposes of the act, and the orders conform to the requirements of § 20. See address of Prof. Henry C. Adams, 5th Ann. Conv. Ry. Com'rs, 44.

Congress in adopting these regulations, and the Commission in carrying them out, have exercised that legislative discretion which belongs to that branch of the Government; they have determined what means will best enable the legislative branch of the Government to perform the duty assigned to it of regulating and protecting interstate commerce. *McCulloch* v. *Maryland*, 4 Wheat. 316, 421; *Lottery Case*, 188 U. S. 321, 353.

There is no merit in the claim of appellees that Congress has granted to the Commission legislative powers in violation of the fundamental law. *Buttfield* v. *Stranahan*, 192 U. S. 497; *Union Bridge Co.* v. *United States*, 204 U. S. 377; *Monongahela Bridge* v. *United States*, 216 U. S. 177; *United States* v. *Grimaud*, 220 U. S. 506.

As to appellees' contention that its constitutional rights are invaded by the publicity given its business, see *Corporation Tax Law Case*, 220 U. S. 107; *Baltimore & Ohio R. R. Co.* v. *Int. Com. Comm., supra.*

The Commerce Court erred in holding that a recast of the forms of reports should be made by the Commission, acting in conformity with the views expressed by that court, thereby requiring that the reports and classification of accounts should only include business partly by railroad and partly by water.

*Mr. James A. Fowler*, Assistant to the Attorney General,

with whom *Mr. Blackburn Esterline*, Special Assistant to
the Attorney General, was on the brief, for the United
States:

Information relating to the entire business of a com-
mon carrier subject to the provisions of the Act to Regulate
Commerce, whether interstate or intrastate, is essential
to the proper enforcement of the law and Congress has
the power to require its production at the instance of the
Interstate Commerce Commission. *McCulloch* v. *Mary-
land*, 4 Wheat. 316, 421, 423; *St. Louis & San Francisco
Railway Co.* v. *Gill*, 156 U. S. 649; *Minneapolis & St. Louis
Railroad Company* v. *Minnesota*, 186 U. S. 257; *Interstate
Commerce Commission* v. *Brimson*, 154 U. S. 447, 465, 470,
472; *Interstate Commerce Commission* v. *Baird*, 194 U. S.
25, 43, 44; *Baltimore & Ohio Railroad Company* v. *Inter-
state Commerce Commission*, 221 U. S. 612, 622; *Flint* v.
*Stone Tracy Company*, 220 U. S. 107; *Employers' Liability
Cases*, 207 U. S. 463, 497.

When common carriers, either by railroad or by water,
engage in commerce among the several States, however
slight the extent, knowledge and information concern-
ing their entire business are essential to the enforcement
of the law, and Congress has the power to establish
rules and regulations requiring them to keep books and
to file reports covering their entire business, interstate
and intrastate, in the manner and form prescribed by the
Interstate Commerce Commission.   In the keeping of
books and the making of reports showing receipts and
expenditures, it is impracticable to separate business
which is intrastate from that which is interstate and re-
quiring such knowledge and information concerning such
intrastate business is not regulation thereof. *The Daniel
Ball*, 10 Wall. 557; *Smith* v. *Alabama*, 124 U. S. 465, 479,
480; *United States* v. *Northern Securities Co.*, 193 U. S. 197,
335; *Interstate Commerce Commission* v. *Illinois Central
Railroad Company*, 215 U. S. 452, 474; *Baltimore & Ohio*

*Railroad Company* v. *Interstate Commerce Commission,* 221 U. S. 612, 618; *Southern Railway Company* v. *United States,* 222 U. S. 20, 26.

By § 20 of the Act to Regulate Commerce, the Interstate Commerce Commission is authorized and empowered to prescribe the method of bookkeeping for and to prescribe the forms of reports and to compel the filing thereof by water line carriers subject to the provisions of the act, as to business other than that carried by them under arrangements with railroad companies for a continuous carriage or shipment. The method of bookkeeping and the forms prescribed by the Interstate Commerce Commission under § 20, which embrace all business, interstate and intrastate, and of whatsoever kind or nature, are in accordance with the intention of Congress as expressed in its legislation on the subject.

Section 20 is not unconstitutional on the ground that it authorizes unreasonable searches and seizures. *Hale* v. *Henkel,* 201 U. S. 43, 77; *Interstate Commerce Commission* v. *Baird, supra; Baltimore & Ohio Railroad Company* v. *Interstate Commerce Commission, supra; Flint* y. *Stone Tracy Company, supra.*

Section 20 is not unconstitutional on the ground that it vests legislative power in the Interstate Commerce Commission.

*Mr. Ralph M. Shaw,* with whom *Mr. John Barton Payne, Mr. Silas H. Strawn* and *Mr. Garrard B. Winston* were on the brief, for appellees:

The Act to Regulate Commerce does not provide that a water carrier, by filing a joint rate with respect to certain traffic with a rail carrier, subjects itself, or all of its business, to all of the provisions of the act.

Congress did not intend to include the water carriers within the terms of the act.

If the appellees are wrong as to this (and it is insisted

they are not), only certain specifically designated traffic of the water carriers is subject to the act.

This appears from: The history of the passage of the act of 1887, including the congressional debates thereon; contemporaneous construction by the courts; contemporaneous interpretation by the Commission itself; the congressional debates prior to the passage of the act of 1906; the act of 1910, which prohibits the interpretation urged by the Commission; the internal evidence of the act; a comparison of certain provisions of the act with specific legislation *in re* water carriers; and the rules laid down by the courts for the interpretation of the Act to Regulate Commerce, all of which preclude the interpretation placed upon it by the Commission in this case.

One engaged in intrastate business, who also engages in interstate business, does not, thereby, subject all his intrastate business to the regulating power of Congress. *Employers' Liability Cases*, 207 U. S. 502; *B. & O. R. R. Co.* v. *I. C. C.*, 221 U. S. 612, 618; *Cin., N. O. & Tex. Pac. Ry.* v. *Int. Com. Comm.*, 162 U. S. 184. *The Daniel Ball*, 10 Wall. 557, explained and distinguished.

An act of Congress, or the order of an officer of the Federal Government, or a subordinate body, created by an act of Congress, or a decree of a Federal court which under the guise or the pretense of regulating interstate commerce, is so broad in its scope as to in fact regulate or interfere with intrastate commerce, is void.

Under such circumstances, especially when the act is penal, the court will not introduce words of limitation and thus by judicial interpretation attempt to make good that which in its essence is void. *Illinois Central* v. *Mc-Kendree*, 203 U. S. 514, 529; *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211, 247; *Employers' Liability Cases*, 207 U. S. 492, 498, 502; *United States* v. *Reese*, 92 U. S. 214, 221; *Trade-Mark Cases*, 100 U. S. 82, 99; *United States* v. *Ju Toy*, 198 U. S. 253, 262.

Section 20 of the Act to Regulate Commerce is void because it is an unlawful delegation of legislative power. The law gives the Commission discretion to determine whether it will legislate or not; the law also confers discretionary power upon the Commission to determine what (if any) the legislation shall be. *Field* v. *Clark*, 143 U. S. 645, 693; *Wayman* v. *Southard*, 10 Wheat. 1, 43; *Harriman* v. *Int. Com. Comm.*, 211 U. S. 407, 418; *O'Neil* v. *Am. Fire Ins. Co.*, 30 Atl. Rep. 943; *Anderson* v. *Manchester Fire Ins. Co.*, 63 N. W. Rep. 241; *Dowling* v. *Lancashire Ins. Co.*, 65 N. W. Rep. 758; *King* v. *Concordia Fire Ins. Co.*, 103 N. W. Rep. 616.

On this point the cases at bar are not, for several reasons, controlled by either *United States* v. *Grimaud*, 220 U. S. 506, or *St. Louis & Iron Mountain R. R. Co.* v. *Taylor*, 210 U. S. 281.

A conspicuous reason is that in the cases at bar Congress did not determine or legislate that there should or ought to be any rules or regulations respecting bookkeeping methods or any uniformity therein. On the contrary, Congress left it to the Commission in their discretion to determine: Whether there should be any legislation on the subject at all; and if so, to enact such legislation. It was thus a complete divestiture or delegation of legislative power.

Whether or not a power claimed but not granted is a necessary incident to the power granted is (where the facts are not conceded) to be determined by the court.

If under the pretense of exercising a power granted Congress or a subordinate body goes beyond that which is necessary, then such action on the part of Congress or its subordinate body is void. *Int. Com. Comm.* v. *Ill. Cent.*, 215 U. S. 452; *Adair* v. *United States*, 208 U. S. 161; *C., R. I. & P. Ry. Co.* v. *Arkansas*, 219 U. S. 453; *Employers' Liability Cases*, 207 U. S. 463; *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186; *Int. Com. Comm.* v. *Union Pacific Co.*, 222 U. S. 541.

Under our dual form of government the Federal Government is supreme in the field of interstate commerce and the state governments are supreme in the field of intrastate commerce. *McCulloch* v. *Maryland*, 4 Wheat. 472; *Worcester* v. *Georgia*, 6 Pet. 515; *Ableman* v. *Booth*, 21 How. 506; *License Tax Cases*, 5 Wall. 462; *Employers' Liability Cases*, 207 U. S. 463, 498; *Pennsylvania* v. *Knight*, 192 U. S. 28; *B. & O. R. R. Co.* v. *I. C. C.*, 221 U. S. 612, 617, 621.

Section 20 of the Act to Regulate Commerce and the orders of the Commission both *in re* "Special Accounting Methods," and *in re* "Special Reports Series Circular No. 10," are void. They are not a regulation of the rates on which interstate commerce moves; they are not a regulation of the road bed over which interstate commerce moves; they are not a regulation of the vehicles in which interstate commerce is carried; they are not a regulation of the employés engaged in handling interstate commerce; they are not a regulation of interstate commerce itself. On the contrary they are an interference with the internal affairs of the appellees; they prohibit the appellees from keeping for their corporate purposes such books as in their own judgment the corporate necessities may require; they prohibit a common carrier engaged as to any part of its business in interstate commerce from keeping any books or memoranda not prescribed by the Commission with respect to any business which is not under the Act to Regulate Interstate Commerce.

In the cases at bar there are no troublesome questions involving the necessity of regulating intrastate commerce in order to regulate interstate commerce. While the appellees deny that Congress intended to subject any of the water carriers to any regulation, nevertheless (assuming for the purposes of this point that they are wrong in this contention), each of the four bills of complaint states in apt language that it is not necessary for the Commission to establish the assailed accounting methods or to make

the assailed inquiries respecting the intrastate business, and the internal affairs of the appellees in order to properly regulate or investigate their interstate business. Each of the bills states in apt language that there is no necessary or legitimate or reasonable relation between many of the rules. and regulations and many of the inquiries made affecting and respecting interstate business, and the appropriate regulation or investigation of the interstate business. These facts are admitted by the demurrers.

Congress has no power to make a general inquisitorial excursion or examination into the internal affairs of a corporation organized under the laws of one of the States. Angell & Ames, § 687; *Guthrie* v. *Harkness,* 199 U. S. 148; *Sinking Fund Case,* 99 U. S. 720; *Northern Securities Co.* v. *United States,* 193 U. S. 348; *Hale* v. *Henkel,* 201 U. S. 75; *In re Pacific Railway Investigation,* 32 Fed. Rep. 241; *Interstate Com. Comm.* v. *Brimson,* 154 U. S. 447; *Wilson* v. *United States,* 221 U. S. 361, 384.

Congress may not inquire into the internal affairs of a state corporation except for certain specific purposes. *Kilbourne* v. *Thompson,* 103 U. S. 168; *In re Chapman,* 166 U. S. 661; *Interstate Com. Comm.* v. *Brimson,* 154 U. S. 478; *Harriman* v. *Inter. Com. Comm.,* 211 U. S. 407, 417; *Wilson* v. *United States,* 221 U. S. 361, 384.

MR. JUSTICE DAY delivered the opinion of the court.

The appellees in these four cases are corporations organized under state laws and engaged in the carriage of passengers and freight by water upon the Great Lakes. They filed bills in the United States Circuit Court for the Northern District of Illinois to enjoin the enforcement of certain orders of the Interstate Commerce Commission. The cases were afterwards transferred to the United States Commerce Court.

The orders of the Commission complained of comprise: First, an order prescribing the method of accounts and

bookkeeping as to the operating expenses of the carriers
and a similar order as to bookkeeping concerning the
operating revenues of the carriers; and, second, an order
requiring a report of the carriers respecting their corporate
organization, financial condition, etc.

The Government of the United States intervened and
filed an answer in each case, but the cases were practically
heard on demurrer, as the record discloses, and therefore
the allegations of the bills well pleaded must be deemed
to be true. The bills contain many conclusions, and argu-
mentative deductions as to the effect of the orders upon
the carriers, which, under the rules of pleading, are not
considered as admitted. *United States* v. *Ames*, 99 U. S.
35, 45.

The pertinent averments necessary to a decision of the
cases, as we view them, show that the carriers are corpora-
tions organized under the laws of certain States of the
Union; that they carry passengers and freight upon the
Great Lakes between ports in different States, which
they designate as their port-to-port interstate business;
that they carry passengers and freight wholly within a
State, which they designate as their port-to-port intra-
state business; and that they also carry passengers and
property in interstate commerce under joint tariffs in
connection with certain railroad carriers of the United
States with whom they have agreed upon joint through
rates, which they designate as their joint rail and water
business. As to the Goodrich Transit Company, it is
averred that eighty per cent of its gross revenue is derived
from its port-to-port interstate and intrastate business,
and less than twenty per cent of its gross earnings is de-
rived from its joint rail and water business. A like aver-
ment is made with respect to the White Star Line, except
that it is said that in its business the revenue derived from
joint rail and water traffic, as aforesaid, is less than one
per cent of its entire revenue.

It is averred that the bookkeeping and accounting methods required by the orders of the Commission differ from those prescribed and now kept by the companies; that the orders of the Commission make no difference between the intrastate port-to-port business and the interstate port-to-port business and the joint rail and water business; and that the orders entered by the Commission prohibit the companies from keeping any accounts, records or memoranda other than those prescribed by the Commission in such orders.

In the White Star Line cases the bills contain an additional averment that that company operates two amusement parks, one at Tashmoo and one at Sugar Island, both in the State of Michigan, and in connection therewith owns, operates and derives revenue from lunch stands, merry-go-rounds, bowling alleys, bath houses, etc., and collects admission fees from people entering the parks. It complains that its business concerning said parks is included within the accounting methods prescribed by the Commission.

As to the report called for by the order of the Commission, it is averred that such report was not required because of any complaint filed against the corporations for the violation of the Act to Regulate Commerce; that there is no statute requiring the report to be kept secret, and, if it is made public, the affairs of the companies will be thrown open to inspection to their injury; that a large number of the inquiries contained in the order of the Commission relate to details of the companies' business solely intrastate, or that which is from port to port; and that the report is not limited to the joint rail and water business of complainants.

There are also averments that the orders were unconstitutional, because the Commission, in undertaking to put in force such requirements, exceeded its authority in so far as the power was asserted to examine into the af-

fairs of the companies not relating to their joint rail and water business, and having reference, as it was alleged, to their domestic business or interstate business not within the terms of the act.

The Commerce Court enjoined the execution of the orders (190 Fed. Rep. 943), declaring that (p. 966):

"It [the Commission] acted within its authority when it made an order calling for reports of all business done by the petitioners under through bills of lading where the transportation was partly by railroad from one State to another, or from one place in the United States to Canada, an adjacent foreign country; and it was within its power when it prescribed the system of accounts and the uniform method of keeping accounts for such interstate business, and so far as the orders call for information confined to such traffic, or directly related thereto, and so far as the orders prescribe uniform systems of bookkeeping and accounting for such traffic and such as is directly related thereto, they must be sustained. But, in so far as the reports called for and the accounting rules prescribed extend beyond such interstate business of the carriers, or include matters of intrastate traffic accounts and affairs and concerns exclusively, they become invasions of the rights of the carriers, and to the extent of such invasions are unlawful."

The court held that the orders concerning the report and auditing would be lawful respecting the interstate business done by the carriers in connection with railroads, as provided by the act, but, in requiring a report concerning the other business of the companies and prescribing bookkeeping methods therefor, the Commission exceeded its authority, and the court granted the prayers of the petitioners for the orders of injunction, ordered a recast of the form of report in conformity with its opinion and remanded the cases to the Commission for that purpose.

Whether this order of the Commerce Court was correct

or not primarily depends upon the construction of the Interstate Commerce Act and the extent to which, in the respect involved in these cases, the carriers herein interested are within the terms of the law. The terms of the act of Congress, as amended June 29, 1906, 34 Stat. 584, c. 3591, and in force at the time when these orders were made, are plain and simple, and, we think, not difficult to comprehend. They are: "The provisions of this act [to regulate commerce] shall apply to . . . any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad (or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment), from one State or Territory of the United States, or the District of Columbia, to any other State or Territory of the United States, etc." The proviso, at the end of the section, that its terms shall not apply to the transportation of passengers or property wholly within one State was inserted for the purpose of showing the congressional purpose not to undertake to regulate a commerce wholly domestic. The first section makes the act apply alike to common carriers engaged in the transportation of passengers or property wholly by railroad or partly by railroad and partly by water under an arrangement for a continuous carriage or shipment. It is conceded that the carriers filing the bills in these cases were common carriers engaged in the transportation of passengers and property partly by railroad and partly by water under a joint arrangement for a continuous carriage or shipment. Such common carriers are declared to be subject to the provisions of the act in precisely the same terms as those which comprehend the other companies named in the act. Carriers partly by railroad and partly by water under a common arrangement for a continuous carriage or shipment are as specifically within the terms of the act as any other carrier named therein.

It may be that certain provisions of the act are in their nature applicable to some carriers and not to others; but we are only concerned to inquire in this case whether the carriers thus broadly brought within the terms of the act by § 1 thereof are subject to the provisions of the statute by the authority of which the Commission undertook to require the system of accounting and the report as to the organization and business of the corporations, and whether, if within the terms of the act, the orders are constitutionally made.

Certain it is that, when engaged in carrying on traffic under joint rates with railroads, filed with the Commission, the carriers are bound to deal upon like terms with all shippers who seek to avail themselves of such joint rates, and are subject to the general requirements of the act preventing and punishing the giving of rebates, the making of unjust discriminations, the showing of favoritism and other practices denounced in the various sections of the act. They are undoubtedly subject to the provisions of § 12 of the act, which permits the Commission to inquire into the management of the business of all common carriers subject to the act and to keep itself informed as to the manner and method in which the same is conducted, with the right to obtain from such common carriers the full and complete information necessary to enable the Commission to carry out the objects for which it was created. The joint rates established are subject to revision by the Commission under § 15 of the act. We must remember, also, in this connection, that under § 21 of the act the Commission is required to make a report each year to the Congress containing such information and data as may be considered of value in the determination of questions connected with the regulation of commerce, together with such recommendations as to additional legislation as the Commission may see fit to make.

As to annual reports, the power conferred in § 20 of the

act extends to all common carriers subject to the provisions of the act. The Commission is vested with authority to prescribe the manner in which such reports shall be made and to require specific answers-to all questions as to which the Commission may need information. The report required in these cases was declared to be needed to enable the Commission to procure full information of the scope and character of the business of carriers by water within the jurisdiction of the Commission and of the extent of their operations, such as would enable the Commission to determine the form for annual report which would best give the information required by the Commission, and at the same time conform as nearly as may be to the accounting systems of carriers by water.

The form of report adopted by the Commission requires a showing as to the corporate organization of each carrier by water subject to the act, the companies owned by it and the parties or companies controlling it; as to the financial condition of the carrier, the cost of its real property and equipment, its capital stock and other stock and securities owned by it, together with all special funds and current assets and liabilities, as well as its funded indebtedness, with collateral security covering same; and as to finances with respect to the operations of the carrier for the current year, giving the revenue of the company and its source, whether from transportation, and what kind, or from outside operations, and all expenses, detailed, with a statement as to the net income or deficit from the various sources, and the report contains a profit and loss account and a general balance sheet. The report further requires certain statistical information, as follows: The routes of the carrier and their mileage; a general description of the equipment owned, leased or chartered by the carrier; the amount of traffic, both passenger and freight, and mileage and revenue statistics, together with a separation of freight into the quantity of the various products transported,

showing also whether originating on the carrier's line or received from a connecting line; and a general description of any separate business carried on by the carrier. But such report is no broader than the annual report of such carriers, as prescribed by the act, for § 20 provides that:

"Such annual reports shall show in detail the amount of capital stock issued, the amounts paid therefor, and the manner of payment for the same; the dividends paid, the surplus fund, if any, and the number of stockholders; the funded and floating debts and the interest paid thereon; the cost and value of the carrier's property, franchises, and equipments; the number of employés and the salaries paid each class; the accidents to passengers, employés, and other persons, and the causes thereof; the amounts expended for improvements each year, how expended, and the character of such improvements; the earnings and receipts from each branch of business and from all sources; the operating and other expenses; the balances of profit and loss; and a complete exhibit of the financial operations of the carrier each year, including an annual balance sheet. Such reports shall also contain such information in relation to rates or regulations concerning fares or freights, or agreements, arrangements, or contracts affecting the same as the Commission may require."

As to the accounts, the statute permits the Commission, in its discretion, for the purpose of enabling it the better to carry out the purposes of the act, to prescribe a period of time within which such common carriers shall have a uniform system of accounts and the manner in which such accounts shall be kept. The Commission may, the statute further provides, in its discretion, prescribe the forms of all accounts, records and memoranda to be kept by the common carriers, to which accounts the Commission shall have access. And the act makes it unlawful for the carriers to keep any accounts, records or memoranda other than those prescribed by the Commission.

We think this section contains ample authority for the Commission to require a system of accounting as provided in its orders and a report in the form shown to have been required by the order of the Commission. It is true that the accounts required to be kept are general in their nature and embrace business other than such as is necessary to the discharge of the duties required in carrying passengers and freight in interstate commerce by joint arrangement between the railroad and the water carrier, but the Commission is charged under the law with the supervision of such rates as to their reasonableness and with the general duty of making reports to Congress which might require a knowledge of the business of the carrier beyond that which is strictly of the character mentioned. If the Commission is to successfully perform its duties in respect to reasonable rates, undue discriminations and favoritism, it must be informed as to the business of the carriers by a system of accounting which will not permit the possible concealment of forbidden practices in accounts which it is not permitted to see and concerning which it can require no information. It is a mistake to suppose that the requiring of information concerning the business methods of such corporations, as shown in their accounts, is a regulation of business not within the jurisdiction of the Commission, as seems to be argued for the complainants. The object of requiring such accounts to be kept in a uniform way and to be open to the inspection of the Commission is not to enable it to regulate the affairs of the corporations not within its jurisdiction, but to be informed concerning the business methods of the corporations subject to the act that it may properly regulate such matters as are really within its jurisdiction. Further, the requiring of information concerning a business is not regulation of that business. The necessity of keeping such accounts has been developed in the reports of the Commission and has been the subject of great consideration. It caused the employ-

ment of those skilled in such matters, and has resulted in the adoption of a general form of accounting which will enable the Commission to examine into the affairs of the corporations, with a view to discharging its duties of regulation concerning them.

There is nothing in the case of *Harriman* v. *Interstate Commerce Commission*, 211 U. S. 407, contrary to the conclusion herein announced. That case dealt with the authority of the Commission to compel the attendance and testimony of witnesses in cases where complaints had not been made. The extent to which the Commission might require systems of accounting and reports of corporations subject to the act was expressly left open in the opinion of the court. 211 U. S. pp. 421, 422.

The necessity of such accounts is emphasized under the English practice, and accounts and reports are required in great detail under the laws of that country.

In the report of the committee appointed by the Board of Trade under the Railway Regulation Acts to make inquiries with respect to the form and scope of the accounts and statistical returns rendered by railway companies the omission of the former law to make provision for any prescribed and uniform system of accounts is pointed out, and it is said:

"It is obviously of the first importance, from the point of view of comparison between the different railway companies, that there should be uniformity of practice among all the companies with regard to the keeping of accounts and statistics; that is to say, that every heading, both in the accounts and in the statistics, should bear precisely the same meaning in the case of all railways—should, in effect, be standardized."

The Railway Companies (Accounts and Returns) Act, December 16, 1911, 1 and 2 Geo. 5, c. 34,—to amend the laws with respect to accounts and returns of railway companies—contains requirements as to finan-

cial accounts and statistical returns which call for a uniform system of accounting, showing the organization and workings of the companies in great detail, together with statistical returns as to their business, subdivided so as to include all the operations of the companies as carriers and in all other enterprises in which they may engage.

The learned Commerce Court was of the opinion that the Commission might require accounts and reports, so far as the business of the water carriers with reference to joint rates by rail and water under a common arrangement was concerned, and remanded the cases to the Commission for revision of their orders upon that basis. But it is argued for the Commission, and it seems to us with great force, that it would be impracticable to make such separation in any system of accounting. It is a matter of general knowledge, of which we may take judicial notice, that traffic of all kinds is conducted upon the same ship and passage. A boat may leave a lake port carrying passengers and freight destined for ports within the State and for ports beyond the State, and as a part of the freight for carriage embrace some carried under the terms of joint arrangements made with connecting railroad carriers. How would it be practicable to separate the items of expense entailed in the carriage of these various classes? It is done upon one boat, with one set of officers and crew, and must, in the nature of things, be under one general bill of expense—at least it would seem impracticable to separate it into its items so as to show the expense of that which it is contended is alone within the terms of the act, as construed by the carriers.

We think the act should be given a practical construction, and one which will enable the Commission to perform the duties required of it by Congress, and, conceding for this purpose that the regulating power of the Commission is limited so far as rates are concerned to joint rates of the character named in § 1, it is still essential that to

enable the Commission to perform its required duties, even with respect to such rates, and to make reports to Congress of the business of carriers subject to the terms of the act, it should be informed as to the matters contained in the report. Congress, in § 20, has authorized the Commission to inquire as to the business which the the carrier does and to require the keeping of uniform accounts, in order that the Commission may know just how the business is carried on, with a view to regulating that which is confessedly within its power.

It is contended that this construction of the statute enables the Commission not only to regulate the interstate business, but as well the wholly intrastate business of the complaining corporations, and is, therefore, beyond the power of Congress. Such cases are cited and relied upon by complainants as the *Employers' Liability Cases,* 207 U. S. 463, and *Illinois Central R. R. Co.* v. *McKendree,* 203 U. S. 514. In those cases acts of Congress and orders of executive departments were held void because they undertook to regulate matters wholly intrastate, as distinguished from those matters of an interstate character and within the legislative power of Congress. And what we have already said as to the character of these orders is enough to indicate that in our opinion they are not regulations of intrastate commerce.

Furthermore, it is said that such construction of § 20 makes it an unlawful delegation of legislative power to the Commission. We cannot agree to this contention. The Congress may not delegate its purely legislative power to a commission, but, having laid down the general rules of action under which a commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making orders in a particular matter within the rules laid down by the Congress. This rule has been frequently stated and illustrated in recent cases in

this court, and needs no amplification here. *Buttfield* v. *Stranahan*, 192 U. S. 470; *Union Bridge Co.* v. *United States*, 204 U. S. 384; *United States* v. *Grimaud*, 220 U. S. 506.

In § 20 Congress has authorized the Commission to require annual reports. The act itself prescribes in detail what those reports shall contain. The Commission is permitted, in its discretion, to require a uniform system of accounting, and to prohibit other methods of accounting than those which the Commission may prescribe. In other words, Congress has laid down general rules for the guidance of the Commission, leaving to it merely the carrying out of details in the exercise of the power so conferred. This, we think, is not a delegation of legislative authority.

And it is argued that Congress has no visitorial power over state corporations. We need not reassert the ample power which the Constitution has been construed to confer upon Congress in the regulation of interstate commerce, declared in the many cases in this court, from *Gibbons* v. *Ogden*, 9 Wheaton, 1, to its most recent deliverances. In *Hale* v. *Henkel*, 201 U. S. 43, 75, while general visitorial power over state corporations was not asserted to be within the power of Congress, it was nevertheless declared as to interstate commerce that the General Government had, in the vindication of its own laws, the same power it would possess if the corporation had been created by act of Congress.

As to one of the corporations it is said that its business includes not only the carriage of passengers and freight, but that it owns and operates in connection therewith certain amusement parks. The report in controversy, as to business other than commerce, requires a general description of such outside operations, and also a statement of the income from and the expenses of the same. As we have said, if the Commission is to be informed of the

business of the corporation, so far as its bookkeeping and reports are concerned, it must have full knowledge and full disclosures thereof, in order that it may ascertain whether forbidden practices and discriminations are concealed, even unintentionally, in certain accounts and whether charges of expense are made against one part of a business which ought to be made against another.

Bookkeeping, it is said, is not interstate commerce. True, it is not. But bookkeeping may and ought to show how a business which, in part at least, is interstate commerce, is carried on, in order that the Commission, charged with the duty of making reasonable rates and prohibiting unfair and unreasonable ones, may know the nature and extent of the business of the corporation, the cost of its interstate transactions and otherwise to inform itself so as to enable it to properly regulate the matters which are within its authority.

We think the uniform system of accounting prescribed and the report called for are such as it is within the power of the Commission to require under § 20 of the act. Nor do the requirements exceed the constitutional authority of Congress to pass such a law. It therefore follows that the Commerce Court erred in granting the injunctions and in remanding the cases to the Commission with instructions to recast its orders.

*Judgments reversed.*

Dissenting, MR. JUSTICE LURTON and MR. JUSTICE LAMAR.