KANSAS CITY SOUTHERN RY. CO. v. UNITED STATES (INTER-
STATE COMMERCE COMMISSION, Intervener).

(Commerce Court, April 21, 1913.)

No. 56.

1. COMMERCE (§ 91*) — INTERSTATE COMMERCE COMMISSION — ORDERS — AC-
COUNTING.

Orders made by the Interstate Commerce Commission with reference
to railroad accounting, as authorized by Interstate Commerce Act Feb.
4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), cannot
be set aside by the courts, unless they constitute an unlawful interfer-
ence with railroad property rights.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec.
Dig. § 91.*]

2. COMMERCE (§ 85*)— ORDERS OF COMMISSION — ACCOUNTING — ABANDONED
PROPERTY.

An order of the Interstate Commerce Commission, classifying expendi-
tures or improvements where parts of a railroad or shop are abandoned
and replaced, requiring the cost or estimated replacement value of the
abandoned property, less salvage, to be deducted from the cost of the
new work, and the balance only charged to the property account, and
the cost or value, less salvage, of the abandoned property charged to
operating expenses, was not objectionable as an arbitrary exercise of
power by the Commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig.
§ 85.*]

3. CONSTITUTIONAL LAW (§ 297*)—DUE PROCESS OF LAW.

Such orders do not deprive the railroad company of any property or
property rights, and are therefore not invalid as a deprivation of prop-
erty without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§
832-834; Dec. Dig. § 297.*]

Petition by the Kansas City Southern Railway Company to vacate
certain accounting orders entered by the Interstate Commerce Com-
mission, in which the Commission intervened. Petition dismissed.

Samuel Untermyer and Arthur M. Wickwire, both of New York
City (Samuel W. Moore, of Kansas City, Mo., on the brief), for pe-
titioner.

Winfred T. Denison, Asst. Atty. Gen., and Blackburn Esterline,
of Washington, D. C. (Thurlow M. Gordon, Sp. Asst. Atty. Gen.,
on the brief), for the United States.

Charles W. Needham, of Washington, D. C., for Interstate Com-
merce Commission.

Before KNAPP, Presiding Judge, and HUNT, CARLAND, and
MACK, Judges.

CARLAND, Judge. By orders of the Interstate Commerce Com-
mission made June 3, 1907, June 1, 1908, June 21, 1909, and May 31,
1910, there was established and promulgated a uniform system of ac-
counts for steam railroads, and a classification of expenditures for
additions and betterments. These orders and classifications provide

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

204 F.—41.

that in classifying expenditures for improvements properly chargeable to additions and betterments, where parts of a railroad or a shop are abandoned and replaced by a new railroad or shop upon a new right of way or site, but serving the same territory, traffic, or purpose, the cost or estimated replacement value of the abandoned property, less salvage, shall be deducted from the cost of the new work, and the balance only charged to the property account, and that the cost or value, less salvage, of the abandoned property shall be charged to operating expenses, provided that, if the amount of the charge to operating expenses warrants a distribution of the loss over a series of years in the future, the total amount may be charged into an account designated "Property Abandoned Account" during a term of years previously approved by the Commission.

Petitioner prays that the orders and classifications above mentioned be annulled, in so far as the particular provision above specified is concerned, for the reason that the classification of expenditures for additions and betterments is unreasonable and beyond the power of the Commission, and because the enforcement thereof will deprive petitioner of its property without due process of law. Petitioner bases its right to complain of said orders and classification upon the following facts:

Petitioner is the owner of a railroad, which it maintains and operates, extending from Kansas City, Mo., to Port Arthur, Tex. The road was originally constructed with a ruling maximum grade of 1 per cent., though in the mountain district it ran as high as 1.35 per cent. It was a properly located, well-constructed road, and ample for the needs of the country through which it ran. In the course of time, with the great development of the country and the resultant increase in traffic which approached the limit of the road's capacity, the conditions warranted and rendered highly desirable such additions or improvements as would enlarge the road's capacity and permit traffic to be moved more rapidly and economically.

Two methods of increasing the capacity of the road were possible—one by double-tracking the road; the other by lowering the grades and permitting traffic to be moved more cheaply. The road is in active competition with powerful rivals in the same general territory, among which are the Southern Pacific, the Missouri, Kansas & Texas, the Missouri Pacific, the St. Louis Southwestern, the Texas & Pacific, the St. Louis & San Francisco, the Atchison, Topeka & Santa Fé, and the Rock Island. The character of the road as a trunk line having a long average haul and the prevalence of low-grade traffic—timber, coal, oil, and like commodities—entailed a low average freight rate. Under these conditions the management decided that the most desirable plan was to lower the grades of the road and thus increase its capacity, promote economy, and render better service to the public. Two methods of reducing the grades at various points along the line were presented; one by raising or lowering the roadbed on the existing right of way, the other by the construction of short sections of new road in substitution for portions of the old road in instances where the desired result could be thus obtained at less cost.

Petitioner determined to revise its grade to a maximum of 0.5 of 1 per cent. at six different points or portions of its line by the construction of short sections of new road and the abandonment of road thus replaced. It was found that the cost of securing the desired gradient upon the original roadbed would be $1,230,318.99, but that the same result could be obtained by means of relocations for a net expenditure of $629,399.74. The actual expenditure on the six new locations, as ascertained on completion of the work and after the filing of the petition in this case, was $763,798. But this in no wise affects the proportion of expenditure between relocations and grade reduction upon the original roadbed. In order to meet the necessary expenditure caused by the reduction of grade, and other improvements, in the manner determined upon, petitioner duly issued and sold $10,000,000 of bonds, dated July 1, 1909, secured by its refunding and improvement mortgage of the same date.

Using the figures appearing in the petition for illustration, we have, as the cost of the grade reduction by relocations, $629,399.74. The estimated cost of replacing the discontinued portions of the road is $482,953. The salvage amounted to $96,469, the difference being $386,484. The orders and classification of the Commission complained of require that this sum of $386,484 must be deducted from the total cost, leaving a net amount of only $242,915.74 chargeable to additions and betterments, the said sum of $386,484 to be charged to the current expenses of operation.

As a second ground upon which petitioner claims to have a right to attack the orders in question the following facts appear: Petitioner owns a shop and terminal plant at Shreveport, La. The shop, with its equipment, is not worn out or obsolete, and is capable with ordinary running repairs of performing for an indefinite term the functions for which it was originally constructed. Petitioner has determined as an integral part of an extensive program of interrelated improvements to construct, and is now engaged in constructing, a new and enlarged shop and terminal plant at Shreveport on a new and different location from that of the shop and terminal plant now existing, which last-mentioned shop and terminal plant are incidentally to be abandoned. The value of the Shreveport shop and terminal plant so to be abandoned is approximately $100,000. The orders and classification complained of require that the estimated replacement value, less salvage, of said shop and terminal plant now existing, shall be charged to petitioner's operating expense account in monthly installments distributed over a period of time to be designated by the Commission, whereas petitioner insists that it has the right to charge the value of the shop and terminal plant when abandoned, less salvage, against its accumulated surplus, as represented in its profit and loss account.

It is evident that the object which the Commission had in view in making the classification of expenditures for additions and betterments was to cause the property account of any railroad to show only the property it had in use, and to eliminate therefrom all property which had been abandoned. It is also evident that the underlying basis for

the contention of petitioner is that it desires to retain in its property account the replacement value, less salvage, of the pieces of road abandoned. It sufficiently appears in the record that what are known as the strong roads financially do not object to the classification of the Commission, for they are quite willing to charge the replacement cost of property abandoned against current operating expenses, as they have the right to earn operating expenses without question. On the other hand, roads that are less strong financially, among which petitioner classes itself, desire to keep the property account as large as possible, because it is a material asset upon which to maintain credit.

[1] In order to clear the case of matters which might lead to confusion, it is proper to say that as to mere bookkeeping this court has no power or authority to interfere with the orders of the Interstate Commerce Commission, and bookkeeping includes all matters relating to the manner or form in which an entry shall be made. In order that this court may interfere, a classification prescribed by the Commission must be such as unlawfully interferes with petitioner's property rights. As to the power of Congress to vest in the Commission, in the manner set forth in section 20 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), authority to establish a uniform system of accounts, and to require annual reports with a uniform balance sheet, and to determine the classification and form of such accounts, we have no doubt. The decisions of the Supreme Court have settled this proposition beyond controversy. St. Louis, I. M. & S. Ry. v. Taylor, 210 U. S. 287, 28 Sup. Ct. 616, 52 L. Ed. 1061; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; The Daniel Ball, 77 U. S. 557, 19 L. Ed. 999; Employers' Liability Cases, 207 U. S. 497, 28 Sup. Ct. 141, 52 L. Ed. 297; United States v. Goodrich Transit Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729.

The real questions for decision are clearly stated in the brief of counsel for the Commission, as follows: (1) Did the Commission act in an unreasonable and arbitrary way in requiring the carriers, when making improvements and betterments chargeable to property account, to deduct from the cost of these improvements and charge to operating expense account the value or estimated value, less salvage, of the property abandoned? (2) Is the requirement that the value or estimated value, less salvage, of abandoned property be charged to the operating expense account a violation of any right guaranteed to the petitioner by the Constitution of the United States?

[2] The orders in controversy were made in pursuance of the command of the statute. The complaint of the petitioner that the orders are an arbitrary exercise of power by the Commission does not relate to the manner of its procedure, but relates to the inherent effect which the orders and classification may have upon petitioner's property rights. The Commission, in making the orders complained of, was establishing a uniform system of accounts and classification for all railroads subject to the provisions of the act. It was impossible to establish separate systems for each railroad, if the system for all of them was to be uniform; hence it is not surprising that the system

of accounts established does not operate upon all roads alike. The object which the Commission had in mind, however, was the same in all cases. The charge that the making of the orders was an arbitrary exercise of power is based upon the claim that upon no theory of correct accounting can the Commission require petitioner to deduct from the cost of additions and betterments the value or estimated value, less salvage, of property abandoned, and to charge the value or estimated value, less salvage, of the property abandoned to operating expenses.

We are not at liberty to invalidate the orders of the Commission on this ground, for there is abundant evidence in the record that the method required by the orders of the commission is a correct and proper one. The testimony is conflicting, but Messrs. Farrington, Bailey, and Adams, gentlemen of high repute in the profession of accounting, testified unqualifiedly that the method adopted by the Commission was a correct and proper one. In addition to this expert testimony is the authority of Mr. Robert H. Montgomery, author of the work Auditing—Theory and Practice, page 319; also Whitten on Valuation of Public Service Corporations, c. 19, § 450 et seq.

[3] Do the orders complained of deprive petitioner of its property without due process of law? To compel petitioner, for the purpose of regulation by the Interstate Commerce Commission, to charge out of its property account property abandoned in improvements for additions and betterments, certainly does not deprive it of any property. Property abandoned ought not to appear in any account, unless in an abandoned property account. Petitioner insists, however, that in the case under consideration there is no abandonment of property. It appears to us like abandonment, and we think it so appeared when counsel for petitioner framed the paragraph of the petition, which reads:

"The said six sections of your petitioner's line were well located at the time the road was constructed, and were, *at the time of the abandonment thereof*, reasonably well adapted to the needs of your petitioner."

We further think that the effect of charging the replacement value or cost of abandoned property, less salvage, in connection with additions and betterments, in the operating expense account, is overestimated. We, of course, cannot pass upon the wisdom of the requirement complained of. Whether or not the matter might have been handled through the profit and loss account with better results is not for us to decide. If the requirement does not affect the property rights of petitioner, this court can afford no relief. The charge in the operating expense account is accompanied by the explanatory statement: "Property abandoned because of additions and betterments." It does not pretend to be an expenditure of money, and therefore might properly be found in some other account; but its entry in the operating expense account deprives petitioner of no property, and if the effect of the entry will be to reduce the net revenue from which dividends are to be paid, still the preferred stockholders cannot complain, as, the re-

duction being lawful, they receive as much as they are lawfully entitled to receive.

The improvements which caused the abandonment were made with money derived from the sale of bonds, and as the improvements were in fact thus made the mortgage bondholders have no reason to complain, and no person, with the proper explanatory notes in connection with the entries required to be made, would be in any way deceived. In view of the foregoing, we are clearly of the opinion that with such statements upon the records of the corporation, in connection with the entry required by the orders of the Commission as petitioner has the right to make, it will not be deprived of any property or illegally injured in any way.

In regard to the provision contained in the "Classification of Expenditures for Additions and Betterments," which allows a distribution of the loss over a series of years in the future, the total amount to be charged into an account designated "Property Abandoned Account," with the approval of the Commission, we must assume that the Commission would grant such privilege in any case where it was reasonable to do so. We cannot, in advance of any application by petitioner for this privilege, assume that it would be denied.

Following the course of the discussion at bar, principal attention has been given to the matter of grade reduction; but what we have said is intended to apply as well to the matter of the shop and terminal plant at Shreveport.

At the time the testimony in this case was taken before a judge of this court, certain letters written to the Commission, approving the manner in which the Commission by its orders has required the cost of abandoned property, less salvage, to be entered, as hereinbefore stated, were offered in evidence by counsel for the United States, and the same were excluded as hearsay. The same matter has been again presented to this court, and after due consideration we are of the opinion that the letters were properly excluded. Counsel for the United States claim that the letters were admissible for the purpose of showing that the Commission did not act arbitrarily. As we have before stated in this opinion, there is no claim in this case that the procedure in connection with the making of the orders complained of was irregular or arbitrary, but that the inherent effect of the orders themselves demonstrated that the orders were an arbitrary exercise of power. The orders were made pursuant to the command of the statute. The Commission could have made them without consulting any one, and the fact that the Commission received such letters as were offered in evidence was immaterial, and the letters themselves, if material, were mere hearsay.

It is claimed that the orders and classifications complained of are arbitrary, for the reason that, if the grade reductions had been made on the original right of way, no deduction from capital account of property abandoned would have been required, and that there is no reason for making any distinction between the two methods of grade reduction. We do not think petitioner is in a position to urge this conten-

tion, as it voluntarily adopted the method of relocation for grade improvements, and it is with reference to that method that the orders and classifications must be tested. In other words, if they are valid as to grade reductions made by relocations, they may not be avoided because of their effect on other methods of grade reduction not followed by petitioner.

The petition will be dismissed; and it is so ordered.