## UNITED STATES v. CLYDE S. S. CO.

Circuit Court of Appeals, Second Circuit.
December 2, 1929.

No. 34.

, Charles H. Tuttle, U. S. Atty., of New York City (John Lord O'Brian and Elmer B. Collins, Sp. Asst. Attys. Gen., of counsel), for the United States.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Roscoe H. Hupper and Burton H. White, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. A shipper of rosin in Boston complained of the Clyde Line to the Interstate Commerce Commission because of what it termed "secret rating from Brunswick, Ga., to Boston, Mass., on rosin that was not intended for Boston." The Clyde Steamship Company had issued bills of lading from Brunswick to Boston, consigning rosin to Hurd & Connor, Inc. Some of these bills of lading had on them the notation "beyond Boston." There was no proof at the trial of a common arrangement between the Clyde Steamship Company and any railroad for continuous carriage of this rosin from Brunswick to points beyond Boston, though the notation on the bills of lading indicated a purpose on the part of the shipper to have the merchandise carried beyond that port, and if at the time the shipments were made there had been a common arrangement between the Clyde Steamship Company and a railroad for this carriage the transaction would have been subject to the jurisdiction of the Interstate Commerce Commission, because it would have involved an arrangement for a continuous carriage partly by water and partly by land. United States v. Munson (D. C.) 33 F.(2d) 211 (1929) A. M. C. at page 506. The steamship company delivered the merchandise at Boston to various railroads for inland shipment on the order of the consignor, but, so far as appears, without any arrangement between the steamship line and the railroads for through rates of carriage.

The Clyde Steamship Company apparently was not subject to the jurisdiction of the Commission, *because of the shipments complained of,* for the reason that no arrangement with any railroad for continuous transportation of these shipments was shown. But it was engaged in the transportation of commodities between Jacksonville, Fla., Charleston, S. C., Wilmington, N. C., and numerous inland points on the line of the Boston & Maine Railroad such as Holyoke, Mass., and Dover, N. H., under a common arrangement for continuous transportation. For this carriage it had filed tariffs with the Commission covering rates to be charged in connection with the rail carriers which participated in its tariffs. It accordingly came within the letter of section 20(5) of the Interstate Commerce Act as amended (49 USCA § 20(5), providing that:

"The Commission shall at all times have access to all accounts, records, and memoranda, including all documents, papers, and correspondence now or hereafter existing, and kept or required to be kept by carriers subject to this chapter * * * and it may employ special agents or examiners, who shall have authority under the order of the Commission to inspect and examine any and all accounts, records, and memoranda, including all documents, papers, and correspondence, now or hereafter existing, and kept or required to be kept by such carriers."

The notation on the bills of lading from Brunswick to Boston of the words "beyond Boston" gave the Commission some ground to suspect that the steamship company had an arrangement with a railroad for continuous carriage. It accordingly authorized its examiner to inspect the records of the Clyde Line for the purpose of ascertaining whether the latter was subject to its jurisdiction in respect to the shipments complained of. The Clyde Line had filed no tariffs relating to shipments of rosin from Brunswick to Boston and points beyond and refused access to its records relating "to the transportation of rosin from Brunswick Ga., via the Clyde Steamship Company to Boston, Mass., and there delivered on the piers of the several railroads for shipment to points outside of Boston Harbor."

By reason of this refusal the United States brought this action to recover forfeitures of $500 for each day during the continuance of the offense.

The special agent of the Commission demanded an examination of the "accounts, records and memoranda including all documents, papers and correspondence having any relation to the transportation of rosin from Brunswick, Ga., via the Clyde Steamship Company to Boston, Mass., and there delivered on the piers of the several railroads for shipment to points outside of Boston Harbor."

The Steamship Company declined to allow any examination stating that it had no common arrangement with any railroad with respect to traffic from Brunswick, Ga., via the port of Boston, and asked the examiner to take the matter up with the company's counsel who, at the time, were defending a proceeding instituted by the Attorney General to obtain a writ of mandamus commanding the company to submit the records in question to the inspection of the Commission. On advice of counsel, the company finally consented to the examination and the application for a writ of mandamus was dropped. Some three months later this action was brought to recover forfeitures arising out of the original refusal to grant an inspection which continued for 19 days.

The trial judge directed a verdict for the defendant on the ground that the demand of the Commission was unreasonable, and should not have been made at a time when a mandamus proceeding was pending in which the Clyde Steamship Company in good faith disputed the Commission's right to an inspection.

The defendant challenges the right of the United States to maintain this action because:

(1) The plaintiff did not prove the case set up in the complaint;

(2) The demand made by the examiner was unduly broad and subjected the defendant to an unlawful search;

(3) The proceeding for a writ of mandamus amounted to an election which barred the action for a penalty;

(4) The penalty of $500 per day imposed by the statute is so harsh as to negative due process of law, and is, therefore, repugnant to the Fifth Amendment of the Constitution.

The first objection cannot stand. The complaint alleges that the defendant is a common carrier engaged in transportation for hire in connection with various carriers by rail "under a common arrangement for continuous carriage * * * from ports on its route including Jacksonville * * * Brunswick, Charleston, * * * and Wilmington." It is true that the shipments here

in question have not been shown to have been made under such a common arrangement. But the government amply proved that the Clyde Steamship Company was a common carrier and that it filed tariffs for through shipments in coastwise trade. It accordingly became subject to inspection by the Commission. The Commission could not properly perform its duties if a carrier confessedly within its jurisdiction as to a part of its business had the right to say just how far an examination should go. The Commission is empowered to require carriers engaged in transportation partly by land and partly by water to render accounts of all their business. Without complete information as to the extent and nature of such business the Commission cannot adequately enforce the obligations of these carriers to deal with all shippers on like terms. In Interstate Com. Comm. v. Goodrich Transit Co., 224 U. S. 194, 32 S. Ct. 436, 441, 56 L. Ed. 729, the Supreme Court required such a carrier to file reports of the operation of an amusement park, which formed no part of its interstate business, and said:

"* * * If the Commission is to be informed of the business of the corporation, so far as its bookkeeping and reports are concerned, it must have full knowledge and full disclosures thereof, in order that it may ascertain whether forbidden practices and discriminations are concealed, even unintentionally, in certain accounts, and whether charges of expense are made against one part of a business which ought to be made against another."

Even if, as we may assume, the shipments of rosin were not through shipments, that could not be known in advance, nor was it possible for the Commission to ascertain in general whether the steamship company, confessedly subject to its jurisdiction, was complying with the law, without a complete knowledge of what it was doing. Colorado v. United States, 271 U. S. at page 165, 46 S. Ct. 452, 70 L. Ed. 878. It is true that in Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 585, 60 L. Ed. 984, Ann. Cas. 1916D, 765, the Supreme Court held that a taxicab company was not obliged to furnish the Public Utilities Commission of the District of Columbia with a statement of the rates it charged in its private garage business. But here we have section 20(1) of the Interstate Commerce Act as amended (49 US CA § 20(1), prescribing reports by carriers of "receipts * * * from all sources" and of "fares or freights, or agreements, arrangements or contracts * * * as the Commission may require." Justice Holmes said in Terminal Taxicab Co. v. Kutz, supra, that there was no such connection between the charges for the garage and the other business in that case as there was "between the facts required and the business controlled in Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 211, 56 L. Ed. 729, 736, 32 S. Ct. 436." We are clear that the latter decision must govern us here. We are convinced that the Commission could not deal with the complaint on which it was acting without knowing all the facts, and it was no answer to its demand for information to say that the particular merchandise was not a subject of interstate commerce, because it was carried on port to port bills of lading.

■ It is said that the demand was unduly broad. We can however see no reason to suppose that the Commission was asking to inspect correspondence containing legal advice or other communications between attorney and client. It may well be that the statute was not intended to cover such correspondence. The demand was in general words asking for records relating to the shipments of rosin. We can discover nothing unreasonable in it. In any view of the case, it embraced many papers which the Commission had the right to examine. These could have been submitted, even if the others were withheld.

■ The contention that the proceeding for a writ of mandamus was an election to abandon all claims to forfeitures is without basis. The two remedies afforded by the statute are not inconsistent. The first is to enforce action; the second, to penalize a refusal to act. The second is a mere spur to promptitude in furnishing information required by the Commission, while the first literally unlocks the door. There can be no election in a situation like this. Bierce v. Hutchins, 205 U. S. at page 346, 27 S. Ct. 524, 51 L. Ed. 828; Carroll v. Stern (C. C. A.) 223 F. 723, at page 725.

■■ Nor is the contention sound that a penalty of $500 per day for refusal on the part of the carrier to submit its records to examination by the Commission is so harsh as to amount to a denial of due process of law.

It is true that statutes which have imposed heavy penalties for violation of legislative commands of an unascertained quality without a judicial hearing have been held invalid. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; St. Louis, Iron Mountain & Southern Ry. Co. v. Wynne, 224 U. S. 354,

694

32 S. Ct. 493, 56 L. Ed. 799, 42 L. R. A. (N. S.) 102; Missouri Pacific Ry. Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 57 L. Ed. 1507; Wadley Southern Ry. Co. v. Georgia, 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405; Southwestern Tel. Co. v. Danaher, 238 U. S. 482, 35 S. Ct. 886, 59 L. Ed. 1419, L. R. A. 1916A, 1208; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596. Many of the decisions have arisen in respect to rate legislation. But these cases involved legislative rates, the legality of which was not apparent on their face, and could only be determined by extrinsic evidence. The real basis for these decisions is that compulsion to accept rates which may be inadequate and the sufficiency of which cannot be determined in advance of a long judicial investigation ought not to be exercised by means of heavy fines. In the same way penalties imposed upon carriers for not paying claims which as presented were excessive have been held unlawful. Chicago, Milwaukee & St. Paul v. Polt, 232 U. S. 165, 34 S. Ct. 301, 58 L. Ed. 554. But moderate penalties assessed for failure to satisfy claims which as presented were just have been sustained. Yazoo & Miss. V. R. v. Jackson Vinegar Co., 226 U. S. 217, 33 S. Ct. 40, 57 L. Ed. 193.

A statute imposing fines on an interstate carrier for declining to furnish information to the Interstate Commerce Commission is quite different from the legislative acts held invalid in the cases we have cited, for it cannot be reasonably contended that it is unfair and arbitrary to require an interstate carrier to furnish the Commission information which may aid the latter in the exercise of its jurisdiction.

It hardly seems possible that actions to collect penalties for failure to file returns prescribed by income tax or inheritance tax laws would have to wait until the validity of the legal requirement should be tested by mandamus, injunction, or in some other preliminary way. The penalties involved in this case are of the same order.

Nor can we say that a penalty of $500 per day for refusal to furnish information is excessive and confiscatory. It seems doubtful whether a small penalty would furnish sufficient inducement to compliance with requests for information. The extent of the penalty required to insure prompt action seems to be a matter for legislative determination so long as such determination does not transcend the bounds of reason.

It may be that the action of the government in suing for penalties after the information was finally given was harsh and drastic but that is a matter over which we have no control. The statute imposing penalties for refusal to allow inspection was a valid one and the refusal afforded a legal justification for the relief sought.

Judgment reversed.