## Petty Liquor License Case.

Argued September 9, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Donald D. Doerr,* Special Assistant Attorney General, with him *Thomas J. Shannon,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

No argument was made nor brief submitted for appellee.

OPINION BY WRIGHT, P. J., November 12, 1969:

On October 29, 1968, after hearing on Citation No. 1098 for 1968, the Pennsylvania Liquor Control Board entered an order suspending for a period of sixty days the restaurant liquor license issued to Douglas and Gretchen Petty for premises known as "The Cottage" in the Borough of Emporium. This order was based upon four findings of fact set forth in the footnote.[1] The licensees appealed to the Court of Common Pleas of Cameron County—Criminal, which tribunal entered an order, June 27, 1969, reducing the period of sus-

---

[1] "1. The licensees, their servants, agents or employes sold, furnished and/or gave liquor and/or malt or brewed beverages to visibly intoxicated persons, on May 4, 1968.

"2. The licensed establishment operated by the licensees was conducted in a noisy and/or disorderly manner, on May 4, 1968.

"3. The licensees, their servants, agents or employes sold, furnished and/or gave liquor and/or malt or brewed beverages between the hours of two o'clock ante meridian and seven o'clock ante meridian, on May 4 and 11, 1968.

"4. The licensees, their servants, agents or employes permitted dancing on the licensed premises during hours when the sale of liquor and/or malt or brewed beverages was prohibited, on May 11, 1968".

pension from sixty to thirty days. The Board has appealed to this court.

The history of the licensed premises includes four prior citations which resulted in suspension or fine. The present citation was based upon an investigation during the months of April and May 1968. In reducing the period of suspension, the court below sustained the Board's findings (Nos. 3 and 4) as to sales and dancing after hours, but ruled as a matter of law that the Board was without authority to suspend the license on a finding (No. 2) of conducting the establishment "in a noisy and/or disorderly manner". With regard to the Board's finding (No. 1) concerning sales to visibly intoxicated persons, the court below concluded that the evidence "was circumstantial and fell far short of sustaining the charge".

Section 471 of the Liquor Code, Act of April 12, 1951, P. L. 90, as amended, 47 P.S. 4-471, reads in pertinent part as follows (italics supplied): "Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws . . . *or upon any other sufficient cause shown,* the board may . . . cite such licensee to appear before it . . . Upon such hearing, if satisfied that any such violation has occurred *or for other such sufficient cause,* the board shall immediately suspend or revoke the license . . ." The court below reasoned that there is no section in the Liquor Code which specifically relates to the conduct of an establishment "in a noisy and/or disorderly manner", nor is there any regulation of the Board in that regard. It is important to note that the court below did not find that the premises were not conducted in a noisy and/or disorderly manner.

In *Reiter Liquor License Case,* 173 Pa. Superior Ct. 552, 98 A. 2d 465, this Court expressly stated that con-

ducting the licensed premises in a noisy and disorderly manner was one of the conditions which constitute "other sufficient cause" for which a license may be revoked.

In *Maple Liquor License Case*, 207 Pa. Superior Ct. 237, 217 A. 2d 859, the Board's order of suspension was based upon four findings of fact, the third of which was that the licensed establishment "was conducted in a noisy and/or disorderly manner". We sustained an appeal by the Board from an order of the County Court of Allegheny County reducing the period of suspension.

In *Freedman Liquor License Case*, 211 Pa. Superior Ct. 132, 235 A. 2d 624, the Board's order of suspension was based on three findings of fact, the first of which was that the licensees "permitted disorderly or improper conduct on the premises". The Court of Quarter Sessions of Philadelphia County sustained an appeal by the licensees as to this finding on the ground that public disturbance was not involved, and that the terms employed were too vague to satisfy due process requirements. We reversed the action of the lower court, and our Supreme Court refused allocatur. 211 Pa. Superior Ct. xxxvii.

In the case at bar, we expressly reiterate that the conduct of a licensed establishment in a noisy and/or disorderly manner is sufficient cause for suspension of the license, and that the Board has power and authority under Section 471 to enter an order of suspension on that ground. Broadly viewed, this accords with the legislative mandate in Section 104(a) of the Liquor Code (47 P.S. 1-104) which provides: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . . and all of the provisions of this act shall

be liberally construed for the accomplishment of this purpose".

Turning now to the second ground relied upon by the court below in reducing the period of suspension, it is to be noted that the uncontradicted testimony of the enforcement officers was not found to be incompetent or incredible. It was merely characterized as circumstantial and falling short of sustaining the charge. Although the imposition of a less severe penalty is warranted if different findings of fact are made, *Delpark Athletic Club Liquor License Case*, 215 Pa. Superior Ct. 1, 257 A. 2d 600, we have repeatedly stated that the court below may not capriciously disregard competent evidence of violations: *35th Ward Democratic Club, Inc., Liquor License Case*, 213 Pa. Superior Ct. 13, 245 A. 2d 713; *Alston Beer Distributor Liquor License Case*, 214 Pa. Superior Ct. 32, 251 A. 2d 808. Without setting it forth in detail, the testimony of the officers with regard to the symptoms, conduct and actions on the part of two of the persons in the licensed premises clearly establishes that these patrons were visibly intoxicated, and that alcoholic beverages were served to them while they were in that condition. A proceeding to suspend or revoke a license is civil in nature, and it is sufficient if the offense charged be established by a preponderance of the evidence: *Summit Hill Rod and Gun Club Liquor License Case*, 184 Pa. Superior Ct. 584, 135 A. 2d 781. Cf. *Bayer Liquor License Case*, 200 Pa. Superior Ct. 210, 188 A. 2d 819.

The order of the court below is reversed, and the order of the Board is reinstated.

———

DISSENTING OPINION BY CERCONE, J.:

The Pennsylvania Liquor Control Board on July 9, 1968 cited Douglas and Gretchen Petty, trading as

The Cottage, at Emporium, Pennsylvania, to show cause why their restaurant liquor license should not be revoked or suspended on the following four charges: (1) Sold, furnished, and/or gave liquor and/or malt or brewed beverages to visibly intoxicated persons, May 4, 1968; (2) Noisy and/or disorderly operation, May 4, 1968; (3) Sales between 2:00 a.m. and 7:00 a.m. May 4 and May 11, 1968; (4) Permitted dancing during prohibited hours, May 11, 1968.

After hearing, the Board, on October 29, 1968, found the four charges to be sustained by the evidence and suspended the Petty license for sixty (60) days. The licensees appealed to the Quarter Sessions Court of Cameron County and after a hearing de novo the court found the evidence to sustain the third and fourth charges. The court found the evidence insufficient to sustain the first charge and held also that the Board did not have any legal right to suspend a liquor license on the second charge. The court below thereupon reduced the suspension from 60 days to 30 days, and the Commonwealth has appealed. The majority reverses the lower court's action and I must respectfully dissent from its decision.

The majority relies on this court's decisions in *Reiter Liquor License Case,* 173 Pa. Superior Ct. 552 (1953); *Maple Liquor License Case,* 207 Pa. Superior Ct. 237 (1966); and *Freedman Liquor License Case,* 211 Pa. Superior Ct. 132 (1967), in support of its holding that conducting licensed premises in a noisy and disorderly manner is "other sufficient cause" for which a license may be revoked. A reading of those opinions, however, reveals that no issue was ever raised as to the propriety of such a conclusion. We were never called upon to decide the constitutionality of the legislature's grant to the Liquor Board of the power to determine "such other sufficient cause". In this

case, however, the issue is raised and we cannot now merely rely on prior decisions in which the validity of the legislative grant was not in question. Nor can the fact that this provision remained unassailed until the present make valid an invalid legislative act. In *Kucker v. Sunlight Oil & Gas Company*, 230 Pa. 528 (1911), our Supreme Court overruled the lower court's refusal to declare invalid a statute of long-standing which had been before the court on previous occasions, the Supreme Court there stating at pages 533-534: "The trial judge disposed of all the constitutional points in the case by saying: 'If this were a recent piece of legislation there might be found . . . a sufficient basis for holding the act invalid. However, it is now more than thirty-five years since the statute was passed, and it has been acted upon without attack, and has been under construction by the courts at various times during that period. I am of the opinion that, applying the law found in Sugar Notch Borough, 192 Pa. 349, it is my duty to consider any radical defects such as the defendant relies on, if they exist, to have been cured, or, at least, to regard the question raised as too belated and stale to entitle it to consideration at the present time.' It is apparent that the learned court below misconceived the Sugar Notch Borough case. While a court should hesitate to declare a statute unconstitutional until clearly satisfied of its invalidity, and where it has been on the statute books for many years the hesitation should be all the greater, *yet, if such an act is plainly in conflict with the organic law of the state, old age cannot give it life, and when the issue of its constitutionality is properly raised, it must be declared void. We have never ruled to the contrary.* In Com. v. Hazen, 207 Pa. 52, an act was declared unconstitutional after it had been on the books for thirty-two years, and in Orkney Street, 194 Pa. 425, after thirty-three years; and many other like

instances could be cited. Although the fact that the act of 1874 has been before this court on several occasions must be given serious consideration in questioning its constitutionality, *yet, since that issue was not raised in any of those cases, it cannot be considered as adjudicated. Therefore, so far as our decisions were concerned, the question was an open one for the court below.*"* This holding was reaffirmed in *Flynn v. Horst,* 356 Pa. 20 (1947), at page 30. The Board's usage of a power improperly granted to it can no more validate the grant than can the Board's exercise of a power not given it. As stated in *Commonwealth v. American Ice Co.,* 460 Pa. 322 (1962), at page 332: "But the fact that the taxing officers may have made administrative determinations that ice-making activities constituted manufacturing under the capital stock tax and selective sales and use tax laws is not controlling on the issue before us. '. . . An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; *it is the law which is to govern rather than departmental opinions in regard to it . . .'* (Emphasis supplied) Federal Deposit Insurance Corp. v. Board of Finance & Revenue of Commonwealth, 368 Pa. 463, 472." I believe, therefore, that this court can and should now inquire into and pass upon the constitutionality of the legislative grant here involved, which is section 471 of Art. IV of the Pennsylvania Liquor Code, Act of April 12, 1951, P. L. 90, as amended, 47 P.S. 4-471, reading as follows: "Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, . . . by any licensee within the scope of this article, his officers, servants, agents or

---

* Emphasis supplied.

employes, *or upon any other sufficient cause shown,* the board may, within one year from the date of such violation or cause appearing, cite such licensee . . . Upon such hearing, if satisfied that any such violation has occurred or *for other sufficient cause,* the board shall immediately suspend or revoke the license, . . . In all such cases, the board shall file of record at least a brief statement in the form of an opinion of the reasons for the ruling or order . . ." (Italics added.)

Under this section the legislature has given to the Board the power and authority to determine "any other sufficient cause" which shall constitute a violation of the Liquor Code. It is my opinion that this is an improper delegation to an administrative body of the legislative duty to determine what shall or shall not constitute a violation of the Liquor Code. No guide lines are set forth to restrict or limit the Board's determination of what constitutes "any other sufficient cause shown." Thus, the result will vary from time to time depending on the viewpoint of the members who make up the Board rather than upon the decisiveness of the legislature which is answerable to the people.[1]

---

[1] As this court stated in *Pesognelli Liquor License Case,* 191 Pa. Superior Ct. 320 (1959) : "An administrative tribunal cannot be given an unlimited or arbitrary discretion, for to do so would result in a government of men instead of a government of laws. The legislature may grant tribunals a broad discretion in the application of standards, but these standards must be limited in scope by provisions in the statute: Hotel Casey Co. v. Ross et al., 343 Pa. 573, 23 A. 2d 737." As so ably stated by Mr. Justice HARLAN in his dissenting opinion in *State of Arizona v. State of California,* 373 U.S. 546, 83 S. Ct. 1468 (1963) : "The principle that authority granted by the legislature must be limited by adequate standards serves two primary functions vital to preserving the separation of powers required by the Constitution. First, it insures that the fundamental policy decisions in our society will be made not by an appointed official but by the body immediately responsible to the people. Second, it prevents judicial review from

This fact places the licensee in the bewildering position of not really knowing when he will be considered in violation of the vague provision "any other sufficient cause" until the moment he is cited by Board for suspension, revocation or fine. The provision, in my opinion, gives rise to the exercise of legislative powers by the Board rather than by the legislature and, therefore, is a clear violation of the constitutional precept that "the legislature cannot delegate its power to make a law": *Locke's Appeal*, 72 Pa. 491, 498 (1873). In *Bell Telephone Co. of Pa. v. Driscoll*, 343 Pa. 109, 113-114 (1941), our Supreme Court reiterated the general rules governing the distinction between an improper grant of legislative power and a proper delegation of administrative power to carry out the law as passed by the legislature: "It is the contention of the appellee, sustained by the court below, that §702 unlawfully delegates legislative powers to the commission and is therefore unconstitutional. As the conclusion of that court seems so clearly right, it will not be necessary to consider other objections to the section raised by the company. While we approach the subject with the presumption that the section is valid and constitutional, there are, nevertheless, constitutional limitations upon the power of the legislature to delegate its authority. This is firmly established by previous decisions of this court as well as by those of the Supreme Court of the United States. The constitution of this Commonwealth, in Article II, §1, provides: 'The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives.' In Boro. of W. Phila., 5 W. & S. 281, 283, we said: 'Under a well-balanced constitution, the legis-

---

becoming merely an exercise at large by providing the courts with some measure against which to judge the official action that has been challenged."

lature can no more delegate its proper function than can the judiciary.' The limits upon the power to delegate authority are set forth in the leading case of Locke's Appeal, 72 Pa. 491, 498: *'The legislature cannot delegate its power to make a law*; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' Where the legislature establishes primary standards and then delegates to an administrative body the power to determine some fact or state of things upon which it makes or intends to make its own action depend, it is the legislature which has legislated and not the administrative body. The same thought was expressed by Chief Justice HUGHES in Panama Refining Co. v. Ryan, 293 U.S. 388, 426, 55 S. Ct. 241, 251, where speaking for the court he said: 'Moreover the Congress may not only give such authorizations to determine specific facts, but may establish primary standards, devolving upon others the duty to carry out the declared legislative policy; that is, as Chief Justice MARSHALL expressed it, "to fill up the details" under the general provisions made by the Legislature.' Again, in Interstate Commerce Com. v. Goodrich Transit Co., 224 U.S. 194, 214, 32 S. Ct. 436, 441, the principle is thus stated: *'The Congress may not delegate its purely legislative power to a commission,* but, having laid down the general rules of action under which a commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making or-

ders in a particular matter within the rules laid down by the Congress.' "*

It is true that section 104 of Article I of the Liquor Code, supra, 47 P.S. 1-104, states: "(a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." It is my opinion, however, that this provision cannot be relied upon as establishing the necessary guidelines or standards which the law requires the legislature to establish for an administrative body. The above provision is merely an affirmation of what is implied: that the Liquor Code is a police power enactment. Therefore, to construe this legislative statement of ·purpose as furnishing the requisite standard for the Board's discretion would be tantamount to delegating to the Board the police power, which the legislature, of course, cannot do.

In *Bell Telephone Co. of Pa. v. Driscoll*, supra, pp. 116-117, the Supreme Court reasoned first that the Act there involved could not be construed as indicating the legislature intended to limit the Commission's discretion by a standard of "public interest", and second that "even if we were to consider that public interest can be implied as the standard for approval, that term would not be a proper standard unless further defined or limited in its meaning. *To hold otherwise would be to reject the rule that the legislature may not delegate its authority to legislate since in any such delegation there is an implication that the power will be exercised in the public interest. Before any commission can decide whether a contract is contrary to public*

---

* Emphasis supplied.

*interest, it is necessary to find what is or what is not in the public interest. The power to make such determination rests with the legislature and without such declaration the commission would be without a standard or criterion.* The phrase 'public interest' as used in this connection is 'a concept without ascertainable criterion.' At best the term is too vague and elastic to furnish a standard. As we have said: 'In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed . . . If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity: Schechter Poultry Corp. v. United States, 295 U.S. 495; Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co., 166 Pa. 72': Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260, 263, 200 A. 672.

. . .

"It is conceded that the legislature may forbid contracts between affiliates which are inimical to the public interest and that the legislature may establish primary standards which such contracts must meet and then delegate to the commssion the power to determine the facts which place such contracts within or outside the legislative prohibition. The objection to the course followed here is that the commission is not restrained in any respect by a standard or norm. *It is the prerogative of the legislature and not of the commission to determine what the public policy shall be. When this has been done the commission may then determine whether a state of facts shows a compliance with that predetermined policy.*"*

---

* Emphasis supplied.

The governing principles of law at issue here are well summarized in *Holgate Bros. Co. v. Bashore,* 331 Pa. 255 (1938) : "Legislative power in Pennsylvania is vested solely in the General Assembly. Regardless of exigencies which at times arise or of how trying our economic or social conditions become, the powers and duties imposed by the Constitution upon the legislative branch of our government remain steadfast *and neither the urgency of the necessity at hand nor the gravity of the situation allow the legislature to abdicate, transfer or delegate its authority or duty to another branch of the government.* Our system of checks and balances in the government was wisely instituted by the framers of the Constitution for the protection of all the people of the Commonwealth and has proved an effective method to prevent unwise, hasty and imprudent legislation. So effective has been this system of government no attempt has been made to amend that part of the Constitution and it remains the fundamental law of this Commonwealth.

"The legislature may, however, leave to administrative officers, boards, and commissions, the duty to determine whether the facts exist to which the law is itself restricted. *In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards, or commissions, must strictly adhere and by which they are strictly governed.*

. . .

"There is another class of cases in which the fact left for future determination is not one conforming in any degree to scientific standard as in those just reviewed. *These are cases in which primary standards are established and the duty delegated to make the policy of the legislature effective.* In Panama Refining Company v. Ryan, 293 U.S. 388, 426, Chief Justice

HUGHES, referring to this class of cases, said: 'Moreover, the Congress may not only give such authorizations to determine specific facts but may establish primary standards, devolving upon others the duty *to carry out the declared legislative policy,* that is, as Chief Justice MARSHALL expressed it "to fill up the details" under the general provisions made by the legislature.' In J. W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, considering a delegation of power to fix tariffs subject to certain rules or standards, the court said (p. 409): 'If *Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative* action is not a forbidden delegation of legislative power.'

"It was upon this principle our legislature created the Public Service Commission and the Milk Control Board: Rohrer v. Milk Control Board, 322 Pa. 257. In each statute (Act of July 26, 1913, P. L. 1374; Act of January 2, 1934, P. L. 174, as amended by the Act of April 30, 1935, P. L. 96) *definite procedure is outlined which must be followed by those administering the law, definite standards are fixed by which utility rates and milk prices are to be arrived at, factors are enumerated which are to be considered as bearing upon reasonable rates and prices, and it is provided that action can be taken only after a hearing, which must be supported by findings of fact and formal reasons.* And the action taken is subject to judicial review to determine whether the facts found bring the case *within the standards prescribed by the legislature.* As to the rule making power of these tribunals, a matter apart from their power to fix prices and rates, *their action is likewise strictly confined by legislative limits.*

"*It is absolutely essential that limits be set on the power conferred on such tribunals and that the scope of their authorized action clearly appear.* 'In creating

such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith to give validity to its action': Wichita Railroad & Light Company v. Public Utilities Commission, 260 U.S. 48, 59. *If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity*: Schechter Poultry Corp. v. United States, 295 U.S. 495; Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co., 166 Pa. 72." (pp. 261-263).* I believe that the application of the above legal principles results in a conclusion that the legislative grant here involved was such a nullity and that the lower court properly dismissed from consideration the Board-made charge of a noisy and/or disorderly operation in determining the period of suspension.

As to the charge of selling, furnishing and/or giving liquor and/or malt or brewed beverages to visibly intoxicated persons, a reading of the testimony of the Board officers, in my opinion, required the lower court's conclusion that such evidence "was circumstantial and fell far short of sustaining the charge."

I would affirm the lower court's decision to reduce the suspension from sixty days to thirty days, and accordingly must dissent.

---

* Emphasis supplied throughout.