## Verrastro & Sons, Inc. Appeal

*George G. Lindsay, Henry P. Perciballi,* and *Bashore & Lindsay,* for appellant.

GREEVY, P.J., August 25, 1970.—Verrastro & Sons, Inc., (hereinafter referred to as "Verrastro") a Pennsylvania corporation with its main office in Ly-

coming County, holds Importing Distributor License No. ID-705, issued by the Pennsylvania Liquor Control Board (hereinafter referred to as "Board.")

Under this license, Verrastro has the right to import beer from out of State and sell it in certain permitted counties, including Snyder County. Section 431(b) of the Liquor Code of April 12, 1951, P. L. 90, as amended, 47 PS §4-431(b), provides that every out-of-State manufacturer of malt or brewed beverages shall give geographical distributing rights to importing distributors and such importing distributors shall limit their sales to licensees within that assigned geographical area. (The original importing distributor is designated as the primary importing distributor and his subsequent distributors as secondary importing distributors.)

Section 4-431(b) further provides:

". . . That the importing distributor holding such distributing rights for such product shall not sell or deliver the same to another importing distributor without first having entered into a written agreement with the said secondary importing distributor setting forth the terms and conditions under which such products are to be resold within the territory granted to the primary importing distributor by the manufacturer . . ."

On September 20, October 9 and 12, and November 21, 1968, Verrastro, a primary, sold a certain amount of beer to Snyder County Beverage Company (hereinafter referred to as "Snyder"). Verrastro and Snyder had entered into a signed agreement as required by the act. Snyder, in turn, sold the same shipments to A & A Beer Distributors (hereinafter referred to as "A & A.") Snyder made a profit on each of these transactions. Snyder is located in Snyder County, a permitted county, but A & A is in Perry County, a non-

permitted county outside the geographical limits of Verrastro's license.

On February 24, 1969, the board issued a citation against Verrastro, alleging that it sold, caused to be sold or conspired to sell certain malt products outside of the territory for which Verrastro had distributing rights. Similar citations were issued against Snyder and A & A.

The board hearing was held on June 12, 1969. On October 2, 1969, the board found that Verrastro was guilty of the violations charged in the citation and suspended Verrastro's license for a period of 20 days. Thereafter, Verrastro filed a timely appeal with this court.

Court hearings were held on April 21 and May 18, 1970, and as part of the evidence a certified copy of the testimony before the board was offered for consideration in this case.

At the close of the testimony presented by the board, Verrastro demurred to the evidence, contending that "the Commonwealth has failed to prove even the allegation of the citation . . . The facts presented by the Board do not substantiate the allegation, in fact."

We now discuss and rule on the demurrer.

A resume of the evidence shows that Verrastro sold beer to Snyder, who, in turn, sold it to A & A. The president of Snyder, at the time of the sales, was the father of the president of Verrastro, this being the only link between the two corporation. Snyder made a small profit on each of the four sales.

The only damaging evidence against Verrastro was the statement obtained by the board from H. Phillip Shook who, at the time of the sales, was the secretary for Snyder and at the time of the court hearings was its president. The statement was taken by Louis

A. Donati, a board agent, on November 26, 1968, but was not taken in the presence of any member of Verrastro. At the board hearing, Shook's statement was admitted into evidence over the objection of Verrastro.

At the court hearing, Shook was present to testify, having been subpoenaed by the board. After giving his name and occupation, he refused to answer all other questions by invoking his right against self-incrimination.

The crux of this case turns on the admissibility of Shook's November 26, 1968, statement. Since the statement was taken out of the presence of Verrastro, it is patently hearsay. Shook's testimony at both the board and court hearings did not substantiate the November 26, 1968, statement or any matters allegedly contained therein. The statement is also inadmissible because it violates Verrastro's right of confrontation under the Sixth Amendment of the United States Constitution. See, e.g., Bruton v. United States, 391 U. S. 123, 88 S. Ct. 1620 (1968). Corporations are entitled to this constitutional privilege. See, e.g., Louis K. Liggett Company v. Baldridge, 278 U. S. 105, 49 S. Ct. 57 (1928).

We rule that Shook's statement is inadmissible.

Furthermore, the fact that beer was sold outside the primary's permitted geographical territory does not, by itself, constitute a violation of the Liquor Code by the primary. Section 441(e) of the Liquor Code, 47 PS §4-441(e), sets forth:

"No distributor or importing distributor shall purchase, sell, resell, receive or deliver any malt or brewed beverages, except in strict compliance with the provisions of subsection (b) of section 431 of this act."

The question thus posed is, what duty, if any, does

the primary have to guarantee that the malt products, when sold to a secondary, are resold in the assigned territory? More specifically, what duty, if any, did Verrastro have to see that the malt products it sold to Snyder were resold only in Verrastro's territory? Absent any evidence of a conspiracy between the primary and secondary, the only duty imposed by section 431(b) on a primary who is dealing with a secondary is to enter into a written agreement "setting forth the terms and conditions under which such products are to be resold within the territory granted to the primary importing distributor by the manufacturer." The mere relationship of the parties gives rise to no inference of conspiracy. In this case, there is no evidence of conspiracy and the required written agreement between the primary and secondary was complied with.

If primaries are to be responsible for policing their sales to secondaries, then that duty should be imposed by the legislature. No such duty is set forth in the present statute.

One other point needs clarification. The testimony before the board involved three cases; Snyder and A & A were also cited. This court has jurisdiction only to hear the appeal of Verrastro. See section 471 of the Liquor Code, 47 PS §4-471; Heffernan's Appeal, 121 Pa. Superior Ct. 544 (1936). As a consequence, we have the duty to separate the evidence in the three cases and by excluding that which is inadmissible as against Verrastro, this court finds there is no evidence to substantiate the charge in this case.

A proceeding to suspend or revoke a license is civil in nature and the offense charged must be established by a preponderance of the evidence: Petty Liquor Case, 216 Pa. Superior Ct. 55, 59 (1969). The board had the duty, and the burden was upon it, to establish the elements of the violation by a preponderance of

the evidence. The board failed to meet this burden. Its findings of fact and conclusions of law are not supported by the evidence. Therefore, we reject the findings, conclusions and penalties of the board (see section 471 of the Liquor Code, 47 PS §4-471), and make the following

### ORDER

And now, August 25, 1970, judgment is entered for defendant upon the demurrer; the appeal of Verrastro & Sons is sustained and the order of the Pennsylvania Liquor Control Board suspending the license of Verrastro & Sons for a period of 20 days is revoked, reversed and set aside.