**Discrimination by Liquor Licensees**

PACKEL, *Attorney General,* November 12, 1974—The Pennsylvania Human Relations Commission and the Pennsylvania Liquor Control Board, through their chief counsel, have asked whether the Pennsylvania Liquor Control Board, consistent with the existing provisions of the Pennsylvania Liquor Code and the Pennsylvania Human Relations Act, can refuse to issue or renew licenses to, and revoke or suspend licenses of, licensees who discriminate on the basis of race, color, religious creed, sex or national origin in their employment policies or in the provision of facilities, accommodations and services? You have also asked whether the Pennsylvania Liquor Control Board can adopt a regulation prohibiting discrimi-

nation by its licensees and setting forth the penalties for violations of such a regulation and of the provisions of the Pennsylvania Human Relations Act? It is our opinion, and you are hereby advised, that the answer to both questions is "yes."

There is no need to detail at length the evil of discrimination and the strong and oft-stated public policy of Pennsylvania and this Nation to root it out at every opportunity. The Fourteenth Amendment to the Federal Constitution and the Federal Civil Rights Act of July 2, 1964, 42 USC §2000a, Title II, 78 Stat. 243 (public accommodations), and Title VII, 42 USC §2000e, 78 Stat. 253, as amended (employment), prohibit arbitrary and invidious discrimination on the basis of race, color, religious creed, ancestry, sex or national origin.[1] The Commonwealth policy with regard to discrimination is also clear. Freedom from discrimination is a basic human right guaranteed by the Pennsylvania Constitution. Article I, sec. 26, of that document provides that "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." The right to freedom from discrimination has been recognized by the Pennsylvania Legislature to be such a civil right, as set forth in section 3 of the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §953:

"The opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and

---

1. Title VII prohibits discrimination based on "race, color, religion, sex or national origin." Title II outlaws discrimination because of "race, color, religion or national origin."

privileges of any place of public accommodation . . . without discrimination because of race, color, religious creed, ancestry, age, sex or national origin are hereby recognized as and declared to be civil rights."

The strength of these provisions with regard to discrimination because of sex is further bolstered by Article I, sec. 27, of the Pennsylvania Constitution which mandates that:

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

The Pennsylvania Human Relations Act, 43 P.S. §§951, et seq., eloquently states the legislature's deep concern over the detrimental effects and substantive evils of discrimination:

"The practice or policy of discrimination against individuals or groups by reason of their race, color, religious creed, ancestry . . . sex or national origin is a matter of concern to the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state. The denial of equal employment, housing and public accommodation opportunities because of such discrimination, and the consequent failure to utilize the productive capacities of individuals to their fullest extent, deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, necessitates their resort to public relief and intensifies group conflicts, thereby resulting in grave injury to the public health and welfare, . . . thereby threatening the peace, health, safety and general welfare of the

Commonwealth and its inhabitants.": 43 P.S. §952(a).

In addition, by requiring the Human Relations Commission to refer those licensees found to have discriminated to the appropriate licensing agency for action (see 43 P.S. §959), the legislature has clearly indicated its desire to subject State licensees to the act's mandates as well as to require State licensing agencies to be part of the act's enforcement mechanism.

To further and effectuate the clear legislative policy prohibiting illegal discrimination, Pennsylvania Governors have issued numerous executive announcements, including the Code of Fair Practices, contract compliance provisions prohibiting discriminatory practices by State contractors, 4 Pa. B. 409, and Governor Shapp's Executive Directives nos. 13 and 21. In the Governor's Executive Directive 21, September 27, 1971, the Governor urged all departments of State government to take action to "insure that recipients of state grants do not discriminate, insure that disadvantaged persons have equal opportunity to become licensed by the state, and *be certain that licensees of the state provide services on a non-discriminatory basis.*"

The Liquor Control Board has nearly plenary power to regulate the traffic in intoxicating liquor and the conduct and management of its licensees. The police power of the State in this area of human activity has been recognized, consistent with any and all aspects of constitutional limitations, to be the most fulsome embodied in the concept of sovereignty. This position has been reaffirmed by the United States Supreme Court in California v. LaRue, 409 U.S. 109 (1972):

"While the States, vested as they are with general

police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals": Id. at page 114.

This great power of the board has been broadly interpreted by our State courts when necessary to carry out the clear policy of the Liquor Code, i.e., the protection of the welfare, health, peace, and morals of the people. See 47 P.S. §§1-104, et. seq.; Commonwealth v. Hilderbrand, 139 Pa. Superior Ct. 304, 11 A. 2d 688 (1940); Pa. Liquor Control Board v. Pittsburgh International Dev. Corp., 5 Pa. Commonwealth Ct. 393, 290 A. 2d 885 (1972). Considering the deleterious impact discrimination has on the public welfare, as noted by the legislature in section 2(a) of the Human Relations Act, as well as the legislative mandate to take appropriate action against discriminating, steps taken by the board to eliminate discrimination on the part of its licensees is clearly in furtherance of the Liquor Code's policy and the legislature's intention.

In the case of issuance of licenses to clubs, the board is given complete discretion: 47 P.S. §§4-404, 4-432(a).[2] In the case of licenses for hotels, restau-

---

2. Pertinent portions of applicable code provisions:

47 P.S. §4-404: "Issuance of hotel, restaurant and club liquor licenses; Upon receipt of the application . . . and upon being satisfied . . . that the applicant is a *person of good repute,* . . . the board shall, in the case of a hotel or restaurant . . . and in the case of a club may, *in its discretion,* issue or refuse a license: . . . provided further, that the board shall refuse any application for a new license or the transfer of any license to a new location if, *in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace*

rants, eating places, and clubs, the board *must* refuse an application for a new license, or the transfer of any license to a new location, if it concludes that the new license or transfer would be detrimental to the welfare, health, peace, and morals of the

*and morals of the inhabitants of the neighborhood."* (Emphasis supplied)

47 P.S. §4-432: "Malt and brewed beverages retail licenses (a) Subject to the restrictions hereinafter provided in this act . . . the board shall, in the case of a hotel or eating place . . . and in the case of a club may, *in its discretion,* issue or refuse the applicant a retail dispenser's license.

"(b) In the case of hotels and eating places, licenses shall be issued *only to reputable persons.*

"(d) The board shall refuse any application for a new license or the transfer of any license to a new location if, *in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood."* (Emphasis supplied)

47 P.S. §4-437(c): "Licenses shall be granted by the board only to reputable individuals or to associations, partnerships and corporations whose members or officers and directors are reputable individuals."

47 P.S. §4-470: "Renewal of licenses; Unless the board shall have given ten days' previous notice to the applicant of objections to the renewal of his license, based upon violation by the licensee or his servants, agents or employes of any of the laws of the Commonwealth or regulations of the board relating to the manufacture, transportation, use, storage, importation, possession or sale of liquors, alcohol or malt or brewed beverages, or the conduct of a licensed establishment, *or unless the applicant has by his own act become a person of ill repute,* or unless the premises do not meet the requirements of this act or the regulations of the board, the license of a licensee shall be renewed." (Emphasis supplied)

47 P.S. §4-471: "Revocation and suspension of licenses; Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulation of the board adopted pursuant to such laws, of any violation of any laws of this Commonwealth or of the United States of America relating to the tax-payment of liquor or malt or brewed beverages by a licensee

neighborhood: 47 P.S. §§4-404, 4-432(d). The clear policy of the Commonwealth with regard to discrimination, as already outlined, must surely be considered by the board in the exercise of its discretion with regard to the issuance of club licenses and in determining whether or not a license would be detrimental to the welfare, health, peace and morals of a neighborhood. In fact, it could be argued that, given the clear finding by the legislature that "[t]he practice or policy of discrimination . . . [threatens] the peace, health, safety and general welfare of the Commonwealth and its inhabitants,"[3] and the legislature's request that licensing authorities take action against discriminating licensees, to ignore this would be a dereliction of responsibility and an abuse of discretion.

Further, the board is mandated to allow licenses only to reputable individuals: 47 P.S. §§4-404, 4-432(b), 4-437(c). Certainly people who violate the Constitution or laws of the United States or the Commonwealth of Pennsylvania, including, but not limited to, the Pennsylvania Human Relations Act, or the clear public policy expressed against discrimination, cannot be considered individuals sufficiently reputable to receive or continue to hold liquor licenses from the board.

This is the position taken by the Maine Liquor

within the scope of this article, his officers, servants, agents or employes, *or upon any other sufficient cause shown,* the board may, within one year from the date of such violation or cause appearing, cite such licensee to appear before it or its examiner, not less than ten nor more than sixty days from the date of sending such licensee, by registered mail, a notice addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked or a fine imposed." (Emphasis supplied).

3. Pennsylvania Human Relations Act, 43 P.S. §952(a).

Commission and upheld by the Supreme Court of Maine: B.P.O.E. Lodge No. 2043 v. Ingraham, 297 A. 2d 607 (Me. 1972), appeal dismissed 411 U.S. 924 (1973), reh. den. 412 U.S. 913. In Maine, the State Liquor Commission refused to renew liquor licenses to fifteen Elks lodges because they restricted their membership to whites only. Maine's Liquor Code required the Commission to "give consideration to the character of any applicant."[4] The Commission held that the Elks' restrictive membership clause violated Maine's clear and important public policy[5] against discrimination and consequently their "character" disqualified them from receiving or holding their liquor licenses.

This interpretation of the board's power is consistent with Pennsylvania judicial decisions which traditionally have held that the Liquor Code provides authority for revocation or suspension of a license upon sufficient cause being shown *other than* a violation of the laws relating to the sale of liquors. The code very wisely does not attempt to catalogue all the causes which it deems sufficient for license revocation or suspension leaving it to the legal discretion of the board, subject to review by the courts. See Revocation of Mark's License, 115 Pa. Superior Ct. 256, 176 A. 254, 258 (1934); Com-

---

4. While the Maine case deals with "character" and the Pennsylvania Liquor Code is addressed to "reputation" this is a distinction without a difference. "The word character is frequently used interchangeably with the word reputation. In a legal sense it means reputation as distinguished from disposition": Commonwealth v. Webb, 252 Pa. 187, 196 (1916).

5. Maine law provides: "No person, firm or corporation holding a license under the State of Maine . . . for the dispensing of food, liquor or for any service . . . shall withhold membership, its facilities or services to any person on account of race, religion or national origin.": 17 M.R.S.A. §1301-A.

monwealth v. Lyons, 142 Pa. Superior Ct. 54, 15
A. 2d 851 (1940). "Other sufficient cause" has been
interpreted by the courts to include, among other
things, violation of the criminal laws of the Com-
monwealth, I.B.P.O.E. of W. Valley Lodge No. 294
v. Pa. Liquor Control Bd. Liquor License Case, 163
Pa. Superior Ct. 395, 62 A. 2d 68 (1948), as well as
acts which are *not* violations of Pennsylvania crim-
inal law, laws relating to the sale of liquors or regu-
lations of the board, but merely actions contrary to
the public welfare, health, peace or morals. These
include permitting the solicitation of patrons for
immoral purposes, permitting patrons to act in
lewd and indecent manner, permitting patrons to
use profane and obscene language, and even
merely conducting the premises in a noisy and dis-
orderly manner.[6]: In Re Reiter Liquor License
Case, 173 Pa. Superior Ct. 552, 98 A. 2d 465 (1953);
In Re Petty Liquor License Case, 216 Pa. Superior
Ct. 55, 258 A. 2d 874, 876 (1969).

It would appear that if merely operating in a noisy
manner or permitting patrons to curse is considered
to be severe enough action contrary to the public
welfare, health, peace and morals as to be suffi-
cient cause for a license revocation then, a fortiori,
discrimination would be also. This is not too harsh a

---

6. "There can be no doubt that the operation of a licensed
establishment in a noisy, improper and disorderly manner is
'sufficient cause' for the revocation of the license. . . . Obvi-
ously any action which violates the expressed purpose of the
act, namely, the protection of the public health, peace and
morals, is sufficient cause for the suspension or revocation of a
license issued and held under the provisions of the very same
act. A noisy and disorderly establishment is not beneficial to
the health, peace and morals of those persons who live nearby
as well as to those who frequent it.": Aquilani's License, 32
D. & C. 348, 352 (1938).

standard of conduct to expect from our liquor licensees. It must always be remembered that, as stated by Mr. Justice Cohen: "Because of the peculiar nature of this business, one who applies for and receives permission from the Commonwealth to carry on the liquor trade assumes *the highest degree of responsibility* to his fellow citizens.": Commonwealth v. Koczwara, 397 Pa. 575, 581, 155 A. 2d 825 (1959) (Emphasis supplied). These precedents provide the board with the authority to revoke licenses when it finds the licensee in violation of the Human Relations Act. Furthermore, even without an independent investigation of its own the board may issue citations to show cause why the license should not be revoked based solely on information provided by other agencies, such as the Human Relations Commission. Cf. Greenspan Liquor License Case, 438 Pa. 129, 264 A. 2d 690 (1970).

It is for all the above reasons that we conclude that the Liquor Control Board has the authority to refuse to issue or renew licenses to, and revoke or suspend licenses of, licensees who discriminate on the basis of race, color, religious creed, sex or national origin in their employment policies or in the provision of facilities, accommodations and services. Note, however, that any attempt to so regulate purely private clubs, in contradistinction to places of public accommodation, may raise constitutional problems:

"Prejudice and bigotry in any form are regrettable, but it is the constitutional right of every person to close his home or club to any person or to choose his social intimates and business partners solely on the basis of personal prejudices including race. These and other rights pertaining to privacy and

private association are themselves constitutionally protected liberties.": Bell v. Maryland, 378 U.S. 227, 313 (1964) (Mr. Justice Goldberg concurring, joined by Mr. Chief Justice Warren and Mr. Justice Douglas).

The crucial question to be determined in each instance, as recognized by the Supreme Court of Pennsylvania in Commonwealth, Human Relations Commission v. Loyal Order of Moose, Lodge No. 107, 448 Pa. 451, 294 A. 2d 594 (1972), is whether a club, in fact, is "distinctly private" or is in reality a place of public accommodation. This clearly is a factual determination to be made by the board on a case by case basis. In Loyal Order of Moose, supra, the court stated that whenever an otherwise private club opens its facilities to non-members, be they lessees of the club's facilities or guests, the club becomes a place of public accommodation as to those facilities. In addition, Chief Justice Jones suggested in his concurrence that a club's role as the center of community activity is also a factor to be considered in the determination of its purely private nature: Loyal Order of Moose, supra, at 461, 462. Therefore, before such an organization can prove its distinctly private nature, it must provide the Liquor Control Board with sufficient information to meet the heavy burden of proving that "the accommodation or activity is related to membership in the organization, *and* . . . [that the] activity or accommodation is distinctly private as to the members of that organization.": Loyal Order of Moose, supra, at 459. (Emphasis in the original).[7] These criteria are listed merely to aid the

7. The Pennsylvania Supreme Court has underscored this heavy burden by requiring that these questions be resolved in

board in making its factual determinations as to what clubs are purely private and are not intended to be complete or conclusive.[8]

Thus, the Liquor Control Board can refuse to issue or renew licenses to, and revoke or suspend licenses of, licensees who discriminate on the basis of race, color, religious creed, sex or national origin in their employment policies or in the provisions of facilities, accommodations and services. The method of incorporating this antidiscrimination factor must, of course, be left to the sound discretion of the board. It is urged, however, that this be accomplished both in a manner similar to the imposition of other requirements for receiving and holding a liquor license, and in a way that will provide all present and potential license holders with adequate notice and explanation of the standard to which they will be held. An appropriate vehicle to accomplish both objectives would be the adoption of a regulation. The Liquor Code authorizes the board to adopt regulations concerning the issuance of licenses and the conduct and management of the places licensed: 47 P.S. §2-207(d), (h) and (i).

the public interest as opposed to the private interest of the license holder: Loyal Order of Moose, supra, at 459.

8. The United States Supreme Court's decision in Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972), in no way limits the authority of the Liquor Control Board. Simply put, that case held that the Fourteenth Amendment of the United States Constitution does not *compel* States to refrain from licensing clubs which discriminate in the sale of liquor on the basis of race. It did not hold, and it is not the law, that the Fourteenth Amendment *prohibits* States from doing so. Thus, the action herein proposed, which furthers the Commonwealth's clear public policy, is constitutionally permissible.