**CONTINENTAL PIPE LINE COMPANY,**
a Delaware corporation, Plaintiff,

v.

**BELLE FOURCHE PIPELINE COMPANY, a Wyoming corporation,**
Defendant.

No. C-74-20.

United States District Court,
D. Wyoming.

March 27, 1974.

# 1334

Urbigkit, Moriarity & Halle, Cheyenne, Wyo., and Houston B. Southern, Continental Oil Co., Houston, Tex., for plaintiff.

Kline & Swainson, Cheyenne, Wyo., Holland & Hart, Denver, Colo., and Andrews, Kurth, Campbell & Jones, Houston, Tex., for defendant.

## JUDGE'S MEMORANDUM

KERR, Judge.

Continental Pipeline Company (Continental) has brought this action against Belle Fourche Pipeline Company (Belle Fourche) seeking injunctive relief. A motion for a temporary restraining order was previously overruled. Belle Fourche filed a motion to dismiss and after a hearing on the motion to dismiss and on the application for a permanent injunction, the Court took the matter under advisement.

The operative facts in this case are not in dispute. Continental is a Delaware corporation, qualified to do business in Wyoming with its principal place of business in Texas. Belle Fourche is a Wyoming corporation with its principal offices in Wyoming. In October 1973, Belle Fourche filed with the Public Service Commission for the State of Wyoming an application for a certificate of public convenience and necessity, seeking to construct a pipeline to serve a developing oil field, the Well Draw field, in Wyoming. Continental also filed a similar application to serve the same Well Draw field. After a hearing on the opposing applications, the Public Service Commission granted Continental, and denied to Belle Fourche, a certificate of public convenience and necessity. See Wyoming Public Service Commission No. 7854 (January 18, 1974). The Public Service Commission found and concluded that "The Well Draw field is in its early development stages; . . . and public need, cost, environmental, and waste of critical steel pipe and energy considerations support and require that only one common carrier serve. (7) The evidence and public interest requires that Continental be granted a certificate . . . because (a) its existing facilities are in the proximity of the field . . .; (c) It can . . . provide service at a lower cost and with less environmental impact; (d) Its proposed rates are lower than those of Belle Fourche . . .".

Based on the findings and order of the Commission, Continental now seeks to enjoin the pipeline construction by Belle Fourche. In response, Belle Fourche asserts that its proposed pipeline is to be an *interstate* carrier and that its application before the Wyoming Public Service Commission was solely for a certificate for an *intrastate* carrier and therefore, the order by the Commission does not affect its proposed operation as the Commission has no jurisdiction over *interstate commerce*. Continental claims that Belle Fourche must obtain a certificate of public convenience and necessity as the Public Service Commission does have jurisdiction, in that, the pipeline would be a local gathering system interconnecting with interstate pipelines at Guernsey—Fort Laramie, Wyoming, and thus, any injunction halting construction and requiring that a certificate be obtained would not be an undue or substantial burden on interstate commerce.

The Wyoming Public Service Commission has general and exclusive power to regulate and supervise every public utility. Wyo.Stat. § 37–11 (1957). A public utility means and includes "every person that owns, operates, leases, controls, . . . (vii) any plant, property or equipment for the transportation of conveyance *to or for the public* of oil or gas by pipeline . . .". Wyo.Stat. § 37–1(f)(vii) (1973). By statute, the Commission's jurisdiction shall not apply "[T]o interstate commerce except when a regulatory field has not been preempted by the United States government . . .". Id. at (viii). By law, all public utilities in Wyoming are deemed common carriers. See Wyo. Const. Art. 10 § 7.

Under the Interstate Commerce Act, its "[P]rovisions . . . . shall apply to common carriers engaged in . . . (b) the transportation of oil or other commodity, except water and except natural . . . gas, by pipeline . . . from one State . . . to any other State . . . .". 49 U.S.C. § 1. Common carriers, under the Act, include all pipeline companies. The United States Constitution, Art. 1, § 8, provides that Congress shall have the power "[T]o regulate commerce . . . among the several states . . . .". The Interstate Commerce Act furthers this constitutional delegation of power, as its purposes include, providing for fair and impartial regulation of all modes of transportation subject to the provisions of the Act, without unjust discriminations, undue preferences or advantages.

■ Although many claims and defenses thereto have been raised, the Court views the question of any undue burden on interstate commerce resulting from its actions as being dispositive and determinative and therefore it does not reach the other issues herein raised. The questions of what constitute interstate commerce and an undue burden thereon, have been the subject of as much litigation as any other constitutional provision. e.g., Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); Buck v. Kuykendall, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623 (1925); Southern Pacific v. Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). No attempt will be made herein to exhaustively treat these issues, as any attempt to do so would be an unnecessary repetition of well stated principles. It is settled law that a state may regulate matters of local concern over which federal authority has not been exercised, even though the regulation has some impact on interstate commerce. e. g., Parker v. Brown, 317 U.S. 341, 63 S. Ct. 307, 87 L.Ed. 315 (1943); Cities Service Co. v. Peerless, 340 U.S. 179, 186, 71 S.Ct. 215, 95 L.Ed. 190 (1950). "The only requirements consistently recognized have been that the regulation not discriminate against or place an embargo on interstate commerce, that it safeguard an obvious state interest, and that the local interest at stake outweigh whatever national interest there might be in the prevention of state restrictions". Cities Service, above, at 186–187, 71 S.Ct. at 220.

■ The laws of Wyoming, above quoted, refer only to intrastate business, rather than interstate business. See State v. Sinclair Pipeline Co., 180 Kan. 425, 304 P.2d 930 (1957). Thus, where the statutes refer to "[T]he transportation or conveyance to or for the public of oil or gas . . ." in defining a public utility, Wyo.Stat. § 37–1(f)(vii) (1973); the Legislature meant, by the "public", the citizenry or consumers of Wyoming. Under Wyoming law, no public utility may construct or extend a pipeline without first obtaining a certificate of public convenience and necessity from the Public Service Commission. Wyo.Stat. § 37–31 (1957). The powers of an administrative agency are statutory. The general rule is that only those powers are granted which are expressly conferred. As a corollary, it is often said that powers are not to be inferred and that a rule of strict interpretation will be followed. e.g., Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 (1955); Marquette Cement Mfg. Co. v. F.T.C., 147 F.2d 589 (7th Cir. 1945); 3 Sutherland, Statutory Construction § 6603 (Horack ed. 1943) and cases cited therein. In some cases the courts have given a liberal interpretation of statutes granting powers to administrative agencies, notably the Interstate Commerce Act. See I.C.C. v. Baird, 194 U.S. 25, 44, 24 S.Ct. 563, 48 L.Ed. 860 (1904); I.C.C. v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729 (1912). The statement of policy, F.C.A. 49 § 1, encourages this liberal stance. In construing the Interstate Commerce Act and the various complementing state statutes, the Court should attempt to achieve a harmonious and conclusive uniformity, so as to leave no operation unregulated and in a "no-man's land".

**1336**

In passing, it might be noted that numerous references have been made to the Natural Gas Act, 15 U.S.C. § 717 et seq., and cases arising thereunder. Although such references are of assistance, it is the view of the Court that the cases cited are not entirely analogous to this matter and are not dispositive.

In this matter the evidence has conclusively shown that Belle Fourche intends to ship crude oil solely interstate. It will interconnect its pipeline with other interstate trunk pipelines. Its shipments will not go to intrastate refineries, as will the oil carried by Continental. Once established that the commerce is exclusively interstate, the conclusion is inescapable that a state cannot regulate it in such a manner as to unduly or substantially burden the free flow thereof. e. g., State v. Sinclair Pipeline Company, 180 Kan. 425, 304 P.2d 930 (1957); Tri-State Gen. & Transm. Ass'n v. Public Serv. Comm'r of Wyo., 412 F.2d 115 (10th Cir. 1969); International Textbook Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678 (1910). It is the essential character, not its mere accidents, of the commerce that determines whether it is interstate commerce. e.g., Long Beach Banana Dist. v. Atchison, T. & S. F. Ry. Co., 407 F.2d 1173 (9th Cir. 1969). The Public Service Commission of Wyoming has taken no action in this matter, although it was aware of this suit, as some of its personnel were called as witnesses.

It is clear that the pipeline to be built by Belle Fourche is of an interstate character. To grant an injunction halting construction would be to interfere unduly and would substantially hamper and place a burden on interstate commerce. Although counsel have presented their cases ably, it is clear on balance that the requested injunction would be an undue impairment where national uniformity is required.

For the reasons stated herein, the motion for a permanent injunction is denied, and the motion to dismiss is granted. This memorandum opinion consti-

tutes the Court's findings of fact and conclusions of law upon this matter. Judgment will be entered denying the injunction and dismissing the complaint.