Bob G. McNEILL, Appellant
(Claimant-Appellee),

v.

PARK COUNTY SCHOOL DISTRICT
NO. 1, Appellee
(Defendant-Appellant).

Dorothy O. McNEILL, Appellant
(Claimant-Appellee),

v.

PARK COUNTY SCHOOL DISTRICT
NO. 1, Appellee
(Defendant-Appellant).

Nos. 5501, 5502.

Supreme Court of Wyoming.

Nov. 6, 1981.

James M. Guill, Goppert, Day & Olson, Cody, for appellants.

Ross D. Copenhaver (argued), and Tracy J. Copenhaver, Legal Intern, Copenhaver & Kahl, Powell, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal arises from a district court's reversal of a decision by the Commissioner of the Wyoming State Department of Labor and Statistics. The commissioner's decision was in the appellants' favor and declared the appellee wrongfully witheld wages. Appellee was ordered by the commissioner to pay appellants wages they claimed due under their employment contracts. The district court reversed partly on the basis that the Labor Commissioner had misconstrued Wyoming law and partly because he had exceeded his jurisdiction. Appellants contend that the district court's action was erroneous for the following reasons:

"1. The [appellants were] not obligated to teach for the School District under a contract for the 1979–1980 school year.

"2. The resignation of Appellant in June of 1979 should have been accepted by the

School District at that time, as it was reasonable notice of Appellant's anticipatory repudiation of his employment relationship, rather than wait to dismiss Appellant in September and increase his damages.

"3. The wage offset of $300.00 taken out of Appellant's last paycheck for his 1978–1979 employment contract was invalid and illegal, and the Commissioner of Labor's findings and order to that effect were not arbitrary, capricious, or unsupported by substantial evidence."

However, the real issue here concerns the scope of the Commissioner of the Department of Labor and Statistics' jurisdiction.

We will affirm.

Appellant Bob G. McNeill was employed as a teacher by the appellee continuously from 1966 until 1979. He was a continuing contract teacher under the definition of that term appearing in § 21–7–102(a)(ii), W.S.1977;[1] and therefore under § 21–7–106, W.S.1977[2] he could not be terminated at the end of a school year unless so notified before March 15, prior to the school year's end. In light of § 21–7–104, W.S.1977[3] it is apparent that a school district's failure to terminate by March 15 constitutes a renewal of the teacher's contract. And thus under state law, since appellee

failed to send notice to Bob McNeill on or prior to March 15, 1979, there was a renewal of his teaching contract for the 1979–1980 school year. However it is appellants' contention that appellee's school board policy No. 532.27 superseded state law. This policy provided:

"Every employment contract for the performance of certificated services for the school district shall be in writing and in duplicate. The contract provides for the payment of an annual salary, payable in regular installments during the year."

Accordingly appellants argue that since the contract was not in writing, there was no contract.

Appellant Dorothy O. McNeill taught in the appellee's school district during the 1977–1978 and 1978–1979 school years. She was an initial contract teacher as that term is defined in § 21–7–102(a)(iv), W.S.1977.[4] Under § 21–7–105, W.S.1977[5] an initial contract teacher must be hired on an annual basis and provided notice of termination by March 15 of each year. On March 14, 1979, Dorothy McNeill was offered a contract for the 1979–1980 school year. On May 4, 1979, she was advised of her teaching assignment for that year.

1. Section 21–7–102(a)(ii), W.S.1977 provides: " 'Continuing Contract Teacher'.—(A) Any initial contract teacher who has been employed by the same school district in the state of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year; or
"(B) A teacher who has achieved continuing contract status in one (1) district, and who without lapse of time has taught two (2) consecutive school years and has had his contract renewed for a third consecutive school year by the employing school district."

2. Section 21–7–106, W.S.1977 provides:
"(a) A continuing contract teacher shall be notified of a recommendation of termination by the superintendent or any member of the board by giving such teacher written notice thereof, together with written reasons therefor on or before March 15 of any year.
"(b) Termination under such recommendation if approved by the board will be effective at the end of the contracted school year in

the year in which notice of such termination is given."

3. Section 21–7–104, W.S.1977 provides:
"A continuing contract teacher shall be employed by each school district on a continuing basis from year to year without annual contract renewal at a salary determined by the board of trustees of each district, said salary subject to increases from time to time as provided for in the salary provisions adopted by the board."

4. Section 21–7–102(a)(iv), W.S.1977 provides:
" 'Initial Contract Teacher'.—Any teacher who has not achieved continuing contract status."

5. Section 21–7–105, W.S.1977 provides:
"An initial contract teacher who has taught in the system continuously for a period of at least ninety (90) days shall be hired on an annual basis and shall be notified in writing of termination, if such is the case, no later than March 15 of each year."

Under § 21–7–107, W.S.1977,[6] any teacher desiring to resign must give notice of that intent prior to April 15. Neither of the McNeills gave any notice of their desire to leave their positions until early July of 1979. At that time they sent the following letter:

"Bob & Dorothy McNeill
1221 White Hall
University Station
Laramie, WY. 82071

"Mr. Don Hillman, Chairman,
Trustees School Dist. One
Powell, Wyoming 82435

"Dear sir;

"We have just learned from the pages of *The Powell Tribune* that the Board has elected to ignore the grievances filed by the staff concerning placement upon the salary schedule. Also it is noted that there does not seem to be much change in the negotiations format established last year.

"These issues, in addition to differences that exist between what we feel education should provide for students and what appears to be the direction Powell Schools is heading, cause us to believe it to be in the best interest of Powell students that we terminate our employment at this time. To continue with such marked differences would likely work hardships upon us and the District and most surely it would have impact upon students. This we feel should be avoided if at all possible.

"So, with a very real feeling of regret, we tender an opportunity for the District to accept our resignations effective immediately, provided they are accepted without penalty and or prejudice.

"Sincerely,

"/s/ Bob G. McNeill
Bob G. McNeill

"/s/ Dorothy O. McNeill
Dorothy O. McNeill

"cc: Board Members
Ed Heiser"

---

6. Section 21–7–107, W.S.1977 provides:

"Any teacher may resign his position, effective at the end of the school year, by giving written notice on or before April 15 of any

Appellee did not accept the tendered resignations. In February 1979, appellee had adopted a policy which provided in essence that any teacher released from a contract after June 1, and prior to July 15, would pay $200.00 for the estimated cost of replacement. After July 15 appellee would be due $300.00. Appellee's position was that the McNeills' tendered resignations were conditioned upon a release from the obligation. Since appellee was not willing to agree to such a release, it viewed the resignations ineffective. When the appellants failed to report to their jobs in August, appellee withheld $300.00 from the final payment due to each under the previous year's contract and initiated dismissal proceedings.

On October 17, 1979, appellants filed claims with the Department of Labor and Statistics for the monies withheld by appellee. The Department of Labor and Statistics' proceedings culminated with the commissioner of that department ordering appellee to pay each appellant the $300.00 in question. Appellee appealed to the district court where the commissioner's order was reversed.

The scope of the Commissioner of Labor and Statistics' jurisdiction is defined in § 27–2–104, W.S.1977, which provides:

"It shall be the duty of the commissioner of labor and statistics to enforce all laws enacted by the legislature of Wyoming, relating to labor, hours of labor, and to the health, welfare, life and limb of the workers of this state; *to see that workers are protected in the collection of their wages lawfully due;* to make such inspections as may be by him deemed necessary of the industrial establishments and buildings hereinafter provided for; to make an inspection of all living accommodations provided employees wherever employed, where such are furnished as a part of the wages, and he shall, as re-

year, to the superintendent of schools or any other designated official, of his desire not to be employed by the school district for the following year."

quired by section 9–21 [§ 9–2–103] of the statutes, report to the governor, together with such recommendations thereon as he deems appropriate." (Emphasis added.)

The general rule is that only those powers expressly conferred are granted to an administrative agency. *Continental Pipe Line Co. v. Belle Fourche Pipeline Co.*, 372 F.Supp. 1333 (D.C.Wyo.1974). The commissioner's power includes only assisting workers in obtaining collection of lawfully due wages. The grant of power to the commissioner does not include jurisdiction to decide what wages are lawfully due in a disputed matter and override a contract of employment.

The statutory scheme can be more clearly seen in §§ 27–4–104 and –105, W.S.1977. Section 27–4–104 provides:

"(a) Whenever an employee quits the service or is discharged therefrom, such employee shall be paid, whatever wages are due him or her, in lawful money of the United States of America, or by check or draft which can be cashed at a bank, and said wages shall be paid within a period of seventy-two (72) hours when he or she voluntarily quits the service, or when an employee is discharged from the service he or she shall be paid within twenty-four (24) hours after his or her discharge. The provisions of this section shall not apply to employees working for interstate carriers where the payroll records of such employees are kept at a location outside the state of Wyoming. In such instances the employee shall be paid within forty-eight (48) hours after the termination of his or her employment. *In any event, the employer may offset from any monies due the employee as wages, such sums as may be due said employer from said employee, which have been incurred by said employee during his employment.* The provisions of this section shall not apply to the earnings of a sales agent employed on a commission basis and having custody of accounts, money or goods of his principal where the net amount due such agent may not be determinable except after an audit or verification of sales, accounts, funds or stocks.

"(b) Whenever an employee who has quit the service or has been discharged therefrom *shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish by decision of the court or verdict of the jury that the amount for which he has brought suit is justly due,* the court before which the case is tried shall allow to the plaintiff a reasonable attorney fee, to be taxed as costs of suit." (Emphasis added.)

Section 27–4–105 provides:

"Every person, firm or corporation, violating any of the provisions of this act [§ 27–4–104] shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than fifty dollars ($50.00), nor more than five hundred dollars ($500.00), for each offense."

Clearly it is for the courts to adjudicate contract disputes concerning the amount of wages due. The commissioner is given the power to assist the worker in obtaining wages over which there is no dispute. And he may act as a complainant in seeking fines and penalties, such as the one provided in § 27–4–105, against those who violate the employment laws covered in § 27–4–104. But his actions in this case were clearly improper and outside the scope of his authority. The district court was correct in reversing the commissioner's order and providing that the dispute between the parties should be decided in a court of law. Accordingly, it would be improper for us to express an opinion on the merits at this time.[7]

Affirmed.

---

7. There is presently pending an action in a Justice of the Peace Court for Park County brought by appellee against appellants seeking damages for breach of contract, where the contractual rights of each of the parties may properly be decided. That litigation is being held in abeyance pending the outcome of this appeal.